UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON SCHMIDT, STEPHEN GOODER, FRANK KURIAN, LEE PULLEN, VICTOR ROSE and his wife, KEESHA ROSE and NICHOLAS SCHMIDT, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>V.<br><br>FORD MOTOR COMPANY<br><br>DEFENDANT. | **FIRST AMENDED COMPLAINT**<br><br>**CIVIL ACTION NO. 12-cv-7222-ER**<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' FIRST AMENDED
## CIVIL CLASS ACTION COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiffs, Jason Schmidt, Stephen Gooder, Frank Kurian, Lee Pullen, Victor Rose and his wife, Keesha Rose, and Nicholas Schmidt, on behalf of themselves and all others similarly situated, file this, their First Amended Civil Class Action Complaint against Defendant, Ford Motor Company (known hereafter as "Ford"), and allege as follows:

## NATURE OF THE ACTION

1.    This amended lawsuit seeks recovery for a national class of consumers alleging breach of express warranty, and also seeks recovery for certain statewide class action consumers, seeking relief for breach of implied warranty, common law fraud and violations of their relevant state

consumer protection statutes, negligent misrepresentation and/or unjust enrichment.   Both monetary and injunctive relief is sought.

## FACTS

2.     Based upon information and belief, between 2004 and 2008, the Defendant manufactured, assembled and marketed a Class of Vehicles containing latent defects as described herein.

3.     Since calendar year 2005 and up until 2012, Defendant has been on notice of consumer complaints regarding a Class of Vehicles (equipped with the 5.4L engine) identified and described more fully below.   These complaints have been made directly to Defendant and/or submitted to the National Highway Traffic Safety Administration ("NHTSA"), Office of Defect Investigation.

4.     The Class of Vehicles described herein suffer(ed) from defects in design and/or manufacture, which have led to the following performance and safety issues: acceleration hesitation, loss of revolutions per minute ("RPM"), stalling, loss of power (including loss of power at high rates of speed), sudden and intermittent deceleration and other similar and potentially life-threatening malfunctions (hereinafter referred to as "Engine Problems").

5.     The aforementioned Engine Problems are the result of defects in the following vehicle systems and components: the Powertrain Control Module (PCM), the Transmission Control Module (TCM), the Electronic Throttle Control (ETC) and/or the Throttle Body Assembly (TBA).

2

6.     Despite having knowledge and notice of these dangerous and costly defects in the referenced engines/vehicles in question, and specifically identified in Ford's Technical Service Bulletins, referenced below, Defendant failed to inform its dealership network of these problems and defects.

7.     As proof of their knowledge of the Engine Problems, on or about August 25, 2006, December 23, 2007, February 18, 2008, May 13, 2008 and August 21, 2008, Defendant issued Technical Service Bulletin ("TSBs") to notify its dealership network of the procedures necessary to rectify the defects at issue and referenced herein.[1]

8.     In the industry, a TSB is informally known as a "silent recall" suppressing the defect information from the public generally.

9.     The aforementioned TSBs advised Defendant's dealership network, and Defendant has admitted, that the Engine Problems may or may not be accompanied by certain diagnostic trouble codes.

10.     The aforementioned TSBs advised Defendant's dealership network, and the Defendant has admitted, that the resolution of these Engine Problems required either the reprogramming of the PCM or ETC and/or the replacement of the ETC and/or TBA.

11.     Although Defendant recognized several years ago that many of its vehicles contained Engine Problems, it actively concealed from the public, and the owners of this Class of Vehicles, the need to perform certain services and/or repairs to remedy these defective and potentially life threatening conditions.

---

[1] Each TSB "supersedes" the previously issued TSB as stated in the document.

12.     Defendant failed to inform its dealership network that the aforementioned Engine Problems were covered by the Express Warranty as dictated by federal Environmental Protection Agency ("EPA") regulations.

13.     Due to the aforementioned EPA regulations, the defendant was under a legal duty to service and/or repair these defective vehicles at no cost to the consumers. Concealment of these Engine Problems was orchestrated to minimize and/or avoid the defendant's contractual and legal responsibilities to the plaintiffs and the putative class of owners.

14.     Defendant was without a doubt "on notice" of their vehicle defects given the complaints it received directly from consumers, the complaints it received indirectly via the NHTSA and the fact that Defendant issued a series of TSBs – gestures which expressly acknowledged the problems with the engines at issue.  It is further alleged that hundreds, if not thousands, of individual consumer complaints have also been submitted to various locations on the internet, and have been received and/or reviewed by the Defendant.

15.     The applicable Express Warranty related to the Class of Vehicles and Engine Problems at issue is 8-years or 80,000 miles after delivery, whichever occurs first.[2]

16.     As previously stated, the Engine Problems manifested in many Ford engines both before and after 2012. However, these breaches of warranty were not discovered and realized until 2012.

17.     Plaintiff, Jason Schmidt, is the owner of a 2005 Ford Expedition (VIN: 1FMFU185X5LA86343).

---

[2] Ford 2004-2008 Model Years Warranty Guide.

18.    Plaintiff, Jason Schmidt's vehicle was sold and distributed by Ford Motor Company less than 8 years ago.  The vehicle currently has less than 80,000 miles on the odometer.

19.    At all times, Plaintiff, Jason Schmidt, used the vehicle as intended and in a reasonable and ordinary manner, foreseeable by Defendant.

20.    Plaintiff, Jason Schmidt, suffered a loss of vehicle power on or about September 24, 2012.  At that time, his power steering and brakes ceased working.  He was traveling down the highway at approximately 50 miles per hour when this incident occurred.  Mr. Schmidt found it necessary to cut across two lanes of traffic, before safely coming to a stop on the shoulder.

21.    Plaintiff, Jason Schmidt, notified an agent of Defendant, a local Ford dealership, North Penn Imports (Colmar, PA), of his vehicle's system/component failure.  Plaintiff was informed that the throttle body component of the PCM needed to be replaced.  The Ford dealer informed Plaintiff that there were no applicable warranties to cover the cost of the repair.  Relying on same, Plaintiff Schmidt paid $683.33 out of pocket to repair his vehicle.

22.    Jason Schmidt contacted the NHTSA to lodge a complaint concerning his vehicle in late September 2012.  At that time he was alerted to the fact that his vehicle was not the only Ford vehicle affected by this unreasonably dangerous defect.  A cursory look online also led Plaintiff Schmidt to determine that his vehicle was not an exception, but rather the problem was pervasive to the Class of Vehicles.

23.    On Thursday, October 3, 2012, Jason Schmidt contacted Elena Ford, current Vice President of Ford Motor Company, via email.  Mr. Schmidt's email explained how the defect in his vehicle manifest as stated in paragraph 20 above.  Mr. Schmidt also explained that he had to

5

repair the throttle component as described in paragraph 21 above. Mr. Schmidt's email provided Ford with further notice of his specific vehicle's defect. Ford was undoubtedly already "in the know" about their defective vehicles, based on the information Mr. Schmidt set forth in his email and the many complaints to the NHTSA.[3]

24.     The same day Mr. Schmidt contacted Elena Ford, he received a telephone call at 4:14 p.m. from Karen Jones of Ford's Executive Office.  Ms. Jones explained that Mr. Schmidt's case number with Ford is Case No. 593042712.  She made no offer to refund Mr. Schmidt's out of pocket expenses.

25.     Plaintiff, Frank Kurian, is the owner of a 2005 Ford F-150 (Engine Size 5.4 Liter V8).

26.     Plaintiff, Frank Kurian's vehicle was sold and distributed by Ford Motor Company less than 8 years ago.  The vehicle currently has 125,000 miles on the odometer.

27.     At all times, Plaintiff, Frank Kurian, used the vehicle as intended and in a reasonable and ordinary manner, foreseeable by Defendant.

28.     Based upon information and belief, Plaintiff, Frank Kurian, owns a vehicle which contains the latent Engine Problems described herein. Although Mr. Kurian's vehicle defect has not yet manifest, he has suffered injury by overpaying for a defective and unreasonably

---

[3] "I started researching this part and have found hundreds and hundreds of the same exact complaint specifically with the 2005 Expedition. I have filed a complaint with the NHTSA and also with Ford. The NHTSA site shows about 280 similar issues with this vehicle. I'm frustrated with the fact I had to spend that money to fix it but more frustrated that this is a very serious issue that could end tragically for someone. If I was taking a left onto a highway, I would have been in a potentially critical accident. Having two young boys and a wife that is pregnant, I'm now worried to drive the vehicle with them in it. I stay in the right lane." – Excerpt from Jason Schmidt's email to Elena Ford dated October 3, 2012, 12:46 p.m.

dangerous vehicle, and has suffered a loss in value of his vehicle and suffered a loss of vehicle usefulness due to these latent defects.

29.     Plaintiff, Lee Pullen, is the owner of a 2005 Ford Expedition, VIN: 1FMFU17585LA49440.

30.     Plaintiff, Lee Pullen's vehicle was sold and distributed by Ford Motor Company less than 8 years ago.  The vehicle currently has less than 80,000 miles on the odometer.

31.     At all times, Plaintiff, Lee Pullen, used the vehicle as intended and in a reasonable and ordinary manner, foreseeable by Defendant.

32.     On December 7, 2012, Lee Pullen was forced to seek repair and paid $614.06 out of pocket to have the throttle body of his vehicle removed and replaced.  Mr. Pullen was never informed of any applicable Warranty which would cover the costs of this repair at the repair shop where his car was serviced (Gregg's Mission Viejo Mobil in Mission Viejo, CA).  Mr. Pullen relied on this nondisclosure.

33.     Plaintiffs, Victor and Keesha Rose, are the owners of a 2005 Ford Expedition (Engine Size 5.4 Liter).

34.     Plaintiffs, Victor and Keesha Rose's vehicle was sold and distributed by Ford Motor Company less than 8 years ago.  The vehicle currently has approximately 94,000 miles on the odometer.

35.     At all times, Plaintiffs, Victor and Keesha Rose, used their vehicle as intended and in a reasonable and ordinary manner, foreseeable by Defendant.

7

36.     Based upon information and belief, Plaintiffs, Victor and Keesha Rose, own a vehicle which contains the latent Engine Problems described herein. Performance defects have materialized and caused losses of power creating a potential safety issue during the operation of their vehicle.

37.     Plaintiff, Nicholas Schmidt, is the owner of a 2004 Lincoln Navigator (Engine Size 5.4 Liter V8).

38.     Plaintiff, Nicholas Schmidt's vehicle was sold and distributed by Ford Motor Company less than 8 years ago.  The vehicle currently has less than 80,000 miles on the odometer.

39.     At all times, Plaintiff, Nicholas Schmidt, used the vehicle as intended and in a reasonable and ordinary manner, foreseeable by Defendant.

40.     Based upon information and belief, Plaintiff, Nicolas Schmidt, owns a vehicle which contains the latent Engine Problems described herein. Although Mr. Schmidt's vehicle defect has not yet manifest, he has suffered injury by overpaying for a defective and unreasonably dangerous vehicle, and has suffered a loss in value of his vehicle and suffered a loss of vehicle usefulness due to these latent defects.

41.     Plaintiff, Stephen A. Gooder, is the owner of a 2005 Ford Expedition (Eddie Bauer series: VIN: 1FMFU18595LA28126).

42.     Plaintiff, Stephen Gooder's vehicle was sold and distributed by Ford Motor Company less than 8 years ago.  His vehicle currently has approximately 122,287 miles on the odometer.

43.     At all times, Plaintiff, Stephen Gooder, used the vehicle as intended and in a reasonable and ordinary manner, foreseeable by Defendant.

44.     On or about December 1, 2012, Plaintiff Gooder experienced a sudden loss of power to his vehicle's engine.  He was able to navigate the dead vehicle into a gas station parking lot. After several minutes, Plaintiff Gooder restarted the engine and drove home without incident. This same scenario has occurred at least six (6) more times since the initial engine failure.

45.     Plaintiff Gooder took his vehicle to an agent of Defendant, the Bryden Ford dealership in Durand, Illinois, on or about December 2012 to have the problem diagnosed and repaired.

46.     Plaintiff Gooder's Ford dealership told him they were unable to determine what the problem was stating that "even Ford Motor wasn't sure of the cause" – but then his Ford dealer suggested the replacement of the throttle body.  Mr. Gooder had the throttle body replaced by the Bryden Ford dealership on or about February 13, 2013 at the out of pocket cost of $463.00.  Mr. Gooder was never informed of any applicable warranty which would cover the costs of this repair.  Mr. Gooder relied on this nondisclosure.

47.     Plaintiffs have suffered damages by way of paying to repair/replacement defective parts, overpaying for their vehicles (which were unreasonably dangerous and defective the moment the original owners purchased the vehicles), making lease payments that were too high, suffering a loss of vehicle usefulness, suffering a loss in vehicle value and/or selling their vehicles at a loss once widespread knowledge of these defects occurred.

9

## PARTIES

48.    Plaintiff, Jason Schmidt, is an individual residing in Sewell, NJ.  Mr. Schmidt is the owner of a 2005 Ford Expedition (Engine Size 5.4 Liter V8).  The vehicle was purchased used in 2012 and has approximately 66,000 miles on the odometer.

49.    Plaintiff, Frank Kurian, is an individual residing in Bloomsburg, PA.  Mr. Kurian is the owner of a 2005 Ford F-150 (Engine Size 5.4 Liter V8).  The vehicle was purchased used in 2012 and has approximately 125,000 miles on the odometer. Plaintiff Kurian does not seek recovery for the breach of express warranties or restitution as described herein. Mr. Kurian seeks recovery via all other causes of action.

50.    Plaintiff, Lee Pullen, is an individual residing in Santa Margarita, CA.  Mr. Pullen is the owner of a 2005 Ford Expedition (Engine Size 5.4 Liter V8).  The vehicle was purchased in 2009 and has approximately 50,600 miles on the odometer.  Plaintiff Pullen does not seek recovery for the unjust enrichment cause of action as described herein but does seek restitution. He seeks recovery via all other causes of action.

51.    Plaintiffs, Victor and Keesha Rose, are individuals residing in Lewisville, AR.  Mr. and Mrs. Rose are the owners of a 2005 Ford Expedition (Engine Size 5.4 Liter).  The vehicle was purchased used on or about January 2008 and has approximately 94,000 miles on the odometer. Plaintiffs Victor and Keesha Rose do not seek recovery for the breach of express warranties, negligent misrepresentation or restitution causes of action as described herein. They seek recovery via all other causes of action.

52.     Plaintiff, Nicholas Schmidt, is an individual residing in Sewell, NJ.  Mr. Schmidt is the owner of a 2004 Lincoln Navigator (Engine Size 5.4 Liter V8).  The vehicle was purchased used in 2007 and has approximately 65,900 miles on the odometer.  Mr. Schmidt seeks recovery for the breaches of warranty and unjust enrichment.  He seeks injunctive and monetary relief as well.

53.     Plaintiff, Stephen A. Gooder, is an individual residing in Rockton, IL.  Mr. Gooder is the owner of a 2005 Ford Expedition (Eddie Bauer series; Engine Size 5.4 Liter).  The vehicle was purchased used on or about October 10, 2012. The vehicle presently has approximately 122,287 miles on the odometer. Plaintiff Gooder does not seek recovery for breach of express, implied warranties or restitution. Mr. Gooder seeks recovery via all other causes of action.

54.     Defendant, Ford Motor Company ("Ford") is a corporation organized and existing under the laws of the State of Delaware.  Its principal place of business is located in Dearborn, Michigan. Defendant conducts continuous and substantial business in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

55.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act (CAFA). There are more than one-hundred class members, there are members of the putative class who are citizens of states different from that of Defendant and the aggregate of the class members' claims is more than $5 million dollars pursuant to 28 U.S.C. § 1332(d).

56.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this jurisdiction and Defendant conducts substantial business in this jurisdiction.

## CLASS ACTION ALLEGATIONS

57.     The Plaintiffs incorporate by reference the aforementioned paragraphs of the Complaint as if they were fully incorporated herein.

58.     This action seeks Certification of a nationwide class based upon breach of express warranties that are governed by federal law (EPA regulations).

59.     All of the defined national class members have Ford products which have common and defective components that require the same inspection, service and/or repair/replacement. Therefore, Certification under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) applies. The class is defined as follows:

> *"All individuals within the United States and its territories, who currently own or lease a model year 2004 through 2008 Ford passenger car and/or light truck vehicle, sold in   the   United States and equipped with a 5.4 liter engine, and which includes the original Powertrain Control Module (PCM), Transmission Control Module (TCM), Electronic Throttle Control (ETC) and/or the Throttle Body Assembly (TBA).   Class members alleging a breach of Express Warranty either own or lease a vehicle that is 8 years old or less, and has 80,000 miles or less,  as of the time of filing this action."*

The Class is further defined as ***excluding*** the following:

> *"Current and former owners of all Ford passenger car and light truck vehicles with a 5.4 L engine that were equipped with and have--<u>at Ford's expense</u>--had the original Powertrain Control Module (PCM), the Transmission Control Module (TCM), the Electronic Throttle Control (ETC) and/or the Throttle Body Assembly recalibrated and/or replaced."*

60.     This action seeks Certification of certain statewide causes of action based upon the breach of statutory and common law causes of action described below. The statewide class actions include the representative Plaintiffs residing in New Jersey (Nicholas Schmidt and Jason

Schmidt), Pennsylvania (Frank Kurian), California (Lee Pullen), Arkansas (Victor and Keesha Rose) and Illinois (Stephen Gooder) who bring these claims pursuant to the law of their respective states. All of the defined class members have Ford products which have common and defective components that require the same inspection, service and/or repair/replacement. Therefore, Certification of statewide class members under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) applies. The specific statewide class claims are set forth below.

61.     A.     <u>The requirements of Federal Rules of Civil Procedure 23(a) and 23(b), are met because:</u>

    a.  Plaintiffs estimate that the proposed class consists of not less than several hundred thousand members throughout the United States, and joinder of all members in this action is impracticable;

    b.  There are questions of law and fact common to the class;

    c.  The common questions predominate over any questions affecting only individual members;

    d.  The named Plaintiffs are adequate representatives of the class. The claims of the Plaintiffs as class representatives are typical of those of the class members in that they have suffered and/or own vehicles with the same defects as exists in the vehicles owned by other members of the class.  The class representatives will vigorously pursue the claims on behalf of the entire class, and will fairly and adequately protect the interests of the entire class.  Plaintiffs' counsel is experienced and professionally able to properly represent the class;

e.  The claims of the representative parties are typical of the claims of each member of the class, and are based on and/or arise out of similar facts constituting the wrongful conduct of the defendant; and

f.  A class action is far superior to any other available method for the fair and efficient adjudication of this controversy.

B.  <u>Prerequisites to a Class Action – Federal Rule of Civil Procedure 23(a). The pre-requisites to maintaining this action as a class action are satisfied in this case as alleged below:</u>

a.  <u>Numerosity</u> – On information and belief, there are several hundred thousand owners of the Class of Vehicles who have suffered damages as described herein, or who will in the foreseeable future, suffer the defects as described herein. Although the exact number of such vehicle owners is unknown to Plaintiffs at this time, discovery should lead to information on the identities and location of many such parties.  Plaintiffs reserve the right to amend their allegations following completion of discovery.  Given the scope of Defendant's business activities, it is clear that the members of the Class are so numerous that joinder is impracticable and the disposition of their claims in a Class action will provide substantial benefits to the parties and the Court.

b.  <u>Commonality</u> – Since Plaintiffs and other members of the class all own or lease a vehicle in the Class of Vehicles, there are questions of law and fact common to the Class.  Such common questions of law and fact predominate over any individual questions affecting Class members.

14

c.  Typicality – Named-Plaintiffs have the same interests in this matter as all the other members of the class, and their claims are typical of all members of the class.  The named-Plaintiffs' claims are typical of the claims of all class members because:  the claims originate from the same practices on the part of Defendant and its acts in furtherance thereof.

d.  Adequacy of Representation – Plaintiffs' claims are aligned with the interests of the absent members of the class such that the class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the whole class.  Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of complex and class action litigation. Plaintiffs will fairly and adequately represent the interests of the class and do not have interests adverse to the class.  Plaintiffs' interests are antagonistic to the interests of Defendant and Plaintiffs will vigorously pursue the claims of the class.

e.  Class Actions Maintainable – Federal Rule of Civil Procedure 23(b)(3). Class action status is also appropriate because the common questions of law and fact identified above predominate over questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  It is desirable to concentrate the litigation of the claims in this District. Plaintiffs and their counsel do not anticipate encountering any unique difficulties in the management of this action as one of a class action.

## COUNT I
## BREACH OF EXPRESS WARRANTY
### [Nationwide Class Action]

62.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

63.     At the time each and every model vehicle was delivered to the original purchaser as a new vehicle, it contained Emissions Defect Warranties and Emission Performance Warranties, which cover various systems and parts. These Express Warranties apply to the Class of Vehicles and were expressly extended to each and every owner of said vehicle during the term of these warranties.

64.     The express warranties at issue include, depending upon the defect, all required service, repairs and replacements at no cost to the owner.

65.     The relevant express warranty coverage period for the applicable vehicles referenced herein is 8 years or 80,000 miles, whichever occurs first.

66.     The defects at issue in this case were discovered and/or became known to Plaintiffs within the applicable coverage period.  As stated previously, Defendant has known, and was put on notice, of the materialization of these defects, constituting breach of the Express Warranty, before the filing of this lawsuit, and yet hid this information from Plaintiffs and others similarly situated.

67.     The systems or components within each system that are defective, and which constitute a breach of the Express Warranties, include: the Powertrain Control Module (PCM), the

16

Transmission Control Module (TCM), the Electronic Throttle Control (ETC) and/or the Throttle Body Assembly (TBA).

68.     As a result of the defects in one or more of these systems and/or parts, the vehicles at issue have experienced difficulty starting, acceleration hesitation, loss of RPM, stalling, loss of power (including loss of power at high rates of speed), sudden and intermittent deceleration, and other similar operational malfunctions--which pose a danger to the operator, passengers and other motorists in close proximity when the failure occurs.

69.     As a result of these defects, Plaintiffs seeking to recover for these breach of warranties include: (a) those current owners of the identified vehicles who have either been required to have their vehicles serviced or repaired at their expense because neither the defendant nor its agents informed these parties that repairs and replacement of parts were covered by the Express Warranties, or (b) those current owners whose vehicles require service, repair and replacement of parts to assure them and their passengers that the vehicle will not fail during use because of the aforementioned defects and breach of warranty.

70.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs have suffered actual damages, or will suffer damages in the foreseeable future, including the purchase of an unreasonably dangerous vehicle, receiving a defective vehicle at the time of purchase, overpayment for their vehicles, loss in vehicle usefulness, and loss of the use of their vehicles, repair and replacement expenses and/or substantial diminution in fair market value of their vehicles.

71.     Plaintiffs have not received the benefit of the Express Warranties set forth in Defendant's Warranty Manual(s).

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

### COUNT II
### BREACH OF IMPLIED WARRANTY
### [Statewide Class Action - Pennsylvania]

72.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

73.     Defendant impliedly warranted to Plaintiffs residing in Pennsylvania that their vehicles, as sold, were safe for future use.

74.     The Class of Vehicles in question contains latent defects which have recently, during their ordinary and anticipated performance, caused unsafe conditions to arise.

75.     The failure of this Class of Vehicles to safely perform has been recently discovered by these plaintiffs, thereby providing them with notice of the aforementioned defects and breach of implied warranty for future safe performance.

76.     As a direct and proximate result of Defendant's breach of implied warranty, Pennsylvania Plaintiffs have suffered actual damages, or will suffer damages in the foreseeable future, including purchase of an unreasonable dangerous vehicle, receiving a defective vehicle at the time of purchase, overpayment for their vehicles, loss in vehicle usefulness, and loss of the use of their vehicles, repair and replacement expenses and/or substantial diminution in fair market value of their vehicles.

77.     Pennsylvania Plaintiffs have not received the benefit of the implied warranties which promised a vehicle safe for future use.

18

78.     Defendant intentionally concealed the defective nature of the Class of Vehicles from these plaintiffs.  Furthermore, the defective nature of the Class of Vehicles could not have been discovered by the exercise of due diligence and reasonable care.

WHEREFORE, Pennsylvania Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**[Statewide Class Action - New Jersey]**

79.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

80.     Defendant impliedly warranted to Plaintiffs residing in New Jersey that their vehicles, as sold, were safe for future use.

81.     The Class of Vehicles in question contains latent defects which have recently, during their ordinary and anticipated performance, caused unsafe conditions to arise.

82.     The failure of this Class of Vehicles to safely perform has been recently discovered by these plaintiffs, thereby providing them with notice of the aforementioned defects and breach of implied warranty for future safe performance.

83.     As a direct and proximate result of Defendant's breach of implied warranty, New Jersey Plaintiffs have suffered actual damages, or will suffer damages in the foreseeable future, including purchase of an unreasonable dangerous vehicle, receiving a defective vehicle at the time of purchase, overpayment for their vehicles, loss in vehicle usefulness, and loss of the use of their vehicles, repair and replacement expenses and/or substantial diminution in fair market value of their vehicles.

19

84.    New Jersey Plaintiffs have not received the benefit of the implied warranties which promised a vehicle safe for future use.

85.    Defendant intentionally concealed the defective nature of the Class of Vehicles from these plaintiffs.  Furthermore, the defective nature of the Class of Vehicles could not have been discovered by the exercise of due diligence and reasonable care.

WHEREFORE, New Jersey Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
### [Statewide Class Action - California]

86.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

87.    Defendant impliedly warranted to Plaintiffs residing in California that their vehicles, as sold, were safe for future use.

88.    The Class of Vehicles in question contains latent defects which have recently, during their ordinary and anticipated performance, caused unsafe conditions to arise.

89.    The failure of this Class of Vehicles to safely perform has been recently discovered by these plaintiffs, thereby providing them with notice of the aforementioned defects and breach of implied warranty for future safe performance.

90.    As a direct and proximate result of Defendant's breach of implied warranty, California Plaintiffs have suffered actual damages, or will suffer damages in the foreseeable future, including purchase of an unreasonable dangerous vehicle, receiving a defective vehicle at the time of purchase, overpayment for their vehicles, loss in vehicle usefulness, and loss of the use

of their vehicles, repair and replacement expenses and/or substantial diminution in fair market value of their vehicles.

91.    California Plaintiffs have not received the benefit of the implied warranties which promised a vehicle safe for future use.

92.    Defendant intentionally concealed the defective nature of the Class of Vehicles from these plaintiffs.  Furthermore, the defective nature of the Class of Vehicles could not have been discovered by the exercise of due diligence and reasonable care.

WHEREFORE, California Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## COUNT V
## BREACH OF IMPLIED WARRANTY
### [Statewide Class Action - Arkansas]

93.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

94.    Defendant impliedly warranted to Plaintiffs residing in Arkansas that their vehicles, as sold, were safe for future use.

95.    The Class of Vehicles in question contains latent defects which have recently, during their ordinary and anticipated performance, caused unsafe conditions to arise.

96.    The failure of this Class of Vehicles to safely perform has been recently discovered by these plaintiffs, thereby providing them with notice of the aforementioned defects and breach of implied warranty for future safe performance.

97.    As a direct and proximate result of Defendant's breach of implied warranty, Arkansas Plaintiffs have suffered actual damages, or will suffer damages in the foreseeable future,

including purchase of an unreasonable dangerous vehicle, receiving a defective vehicle at the time of purchase, overpayment for their vehicles, loss in vehicle usefulness, and loss of the use of their vehicles, repair and replacement expenses and/or substantial diminution in fair market value of their vehicles.

98.     Arkansas Plaintiffs have not received the benefit of the implied warranties which promised a vehicle safe for future use.

99.     Defendant intentionally concealed the defective nature of the Class of Vehicles from these plaintiffs.  Furthermore, the defective nature of the Class of Vehicles could not have been discovered by the exercise of due diligence and reasonable care.

WHEREFORE, Arkansas Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

**COUNT VI**
**COMMON LAW FRAUD and VIOLATIONS OF**
**PENNSYLVANIA'S UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW ("UTPCPL")**
**[Statewide Class Action - Pennsylvania]**

100.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

101.    All Plaintiffs and class members' vehicles were purchased primarily for personal, family or household uses.

102.    During the calendar years 2005 through 2012, the defendant learned of hundreds, if not thousands, of customer complaints regarding the poor performance of the Class of Vehicles identified herein, including specifically, complaints of acceleration hesitation, loss of RPM, stalling, loss of power, sudden and intermittent deceleration, and other similar operational

malfunctions. These complaints were made directly to Defendant and/or submitted to the National Highway Traffic Safety Administration, Office of Defect Investigation.

103.    Beginning in 2006, the defendant, with knowledge that its vehicles equipped with a 5.4L engine were experiencing or could experience sudden acceleration hesitation, loss of RPM, stalling, loss of power, or sudden and intermittent deceleration, issued a series of TSBs (known colloquially in the industry as a "silent recall") to notify its dealership network of the necessary service procedures required to rectify these symptoms and complaints.

104.    While the defendant was fully aware by 2006 of the aforementioned defects causing the malfunction of vehicles equipped with the aforementioned engine, Defendant engaged in deceptive conduct, unconscionable commercial practices, fraud, or knowing concealment, nondisclosure, suppression or omission of material facts with the intent that others rely upon such concealment, nondisclosure, suppression, and/or omission.

105.    While the defendant was fully aware by 2006 that the vehicle models in question and/or the component parts at issue were defective and that, therefore, a breach of the aforementioned warranties had materialized, the defendant failed to notify each and every owner/class member of these breach of warranties and/or it concealed this information from those consumers that the defendant knew relied upon the defendant to provide notice of such defects.

106.    In an effort to avoid liability for the breach of the aforementioned express warranties, the defendant hid from the public and the plaintiffs its knowledge of the defects in question with the intent of avoiding liability for the breach of warranties.

107.    Defendant's intentional issuance of a series of TSBs, beginning in 2006, constituted a blatant attempt to avoid its responsibility to notify all Plaintiffs of the defects and breach of express warranty.  A TSB, by its very informal nature, does not constitute a public disclosure.

108.    The defendant knowingly concealed the defects in the Class of Vehicles from all Plaintiffs, with the intent of avoiding financial responsibility to service, repair and/or replace pertinent components.

109.    As part of its on-going intent to conceal the defects in question, the defendant has refused to honor or notify dealers of the existent breach of warranties, causing owners to have to pay for the repairs necessitated by these defects.

110.    The defendant affirmatively acted to conceal the defects at issue and intentionally failed to disclose the defects to Plaintiffs. This misconduct arose by Defendant's silence as well as its advice to its dealership network that the repairs and/or replacements required were not covered by the warranties issued with each vehicle.

111.        (a)    Defendant made a false representation or knowing omission of a presently

            existing or past fact[4];

            (b)    Defendant had exclusive knowledge of material facts not known to

            Plaintiffs, and therefore knew its representations or omissions were false,

            incomplete and/or misleading;

---

[4] Specifically, Defendant represented that the Class of Vehicles possess(ed) characteristics, benefits, uses and qualities which they do/did not possess.  Defendant represented that the Class of Vehicles were/are of a particular standard, quality and grade when they were/are not.  Defendant represented the Class of Vehicles, via advertising, with the intent not to sell them as advertised.  Finally, Defendant represented that transactions involving the Class of Vehicles conferred or involved rights, remedies and obligations, which it did/does not.

(c)     Defendant intended for Plaintiffs to rely on the representation
or omission;

(d)     Plaintiffs justifiably and reasonably relied on Defendant's
deceptive conduct, nondisclosure, misrepresentation or omission[5];

(e)     Defendant had an obligation to disclose the omitted information because it
concerned safety considerations, which are considered material to a reasonable
consumer and because Defendant was in a superior position with respect to
bargaining power and product knowledge; and

(f)     As a result, Plaintiffs have been harmed.

112.    Pennsylvania's consumer protection statute, known as the UPTCPL (73 Pa. Cons. Stat.
§§201-1-201-9.2), has been violated by Defendant based on the foregoing deceptive conduct.

WHEREFORE, Plaintiffs hereby demand damages from Defendant in an amount to be
determined at trail, plus interest and costs.

---

[5] Because Ford failed to inform its dealership network that it was under obligation, vis a vis the Express Warranty, to pay for any repairs, Plaintiffs reliance stems from the dealership network's reliance on Defendant's nondisclosure of that information, misrepresentation of its obligations and omission of liability.  The fact that Plaintiffs did not see the TSB is irrelevant.

## COUNT VII
## COMMON LAW FRAUD and VIOLATIONS OF
## CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT "CLRA")
### [Statewide Class Action - California]

113.   Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

114.   All Plaintiffs and class members' vehicles were purchased primarily for personal, family or household purposes.

115.   During the calendar years 2005 through 2012, the defendant learned of hundreds, if not thousands, of customer complaints regarding the poor performance of the Class of Vehicles identified herein, including specifically, complaints of acceleration hesitation, loss of RPM, stalling, loss of power, sudden and intermittent deceleration, and other similar operational malfunctions. These complaints were made directly to Defendant and/or submitted to the National Highway Traffic Safety Administration, Office of Defect Investigation.

116.   Beginning in 2006, the defendant, with knowledge that its vehicles equipped with a 5.4L engine were experiencing or could experience sudden acceleration hesitation, loss of RPM, stalling, loss of power, or sudden and intermittent deceleration, issued a series of TSBs (known colloquially in the industry as a "silent recall") to notify its dealership network of the necessary service procedures required to rectify these symptoms and complaints.

117.   While the defendant was fully aware by 2006 of the aforementioned defects causing the malfunction of vehicles equipped with the aforementioned engine, Defendant engaged in deceptive conduct, unconscionable commercial practices, fraud, or knowing concealment,

nondisclosure, suppression or omission of material facts with the intent that others rely upon such concealment, nondisclosure, suppression, and/or omission.

118.    While the defendant was fully aware by 2006 that the vehicle models in question and/or the component parts at issue were defective and that, therefore, a breach of the aforementioned warranties had materialized, the defendant failed to notify each and every owner/class member of these breach of warranties and/or it concealed this information from those consumers that the defendant knew relied upon the defendant to provide notice of such defects.

119.    In an effort to avoid liability for the breach of the aforementioned express warranties, the defendant hid from the public and the plaintiffs its knowledge of the defects in question with the intent of avoiding liability for the breach of warranties.

120.    Defendant's intentional issuance of the TSBs beginning in 2006 constituted a blatant attempt to avoid its responsibility to notify all Plaintiffs of the defects and breach of express warranty.  A TSB, by its very informal nature, does not constitute a public disclosure.

121.    The defendant knowingly concealed the defects in the Class of Vehicles from all Plaintiffs, with the intent of avoiding financial responsibility to service, repair and/or replace pertinent components.

122.    As part of its on-going intent to conceal the defects in question, the defendant has refused to honor or notify dealers of the existent breach of warranties, causing owners to have to pay for the repairs necessitated by these defects.

123.    The defendant affirmatively acted to conceal the defects at issue and intentionally failed to disclose the defects to Plaintiffs. This misconduct arose by Defendant's silence as well as its

advice to its dealership network that the repairs and/or replacements required were not covered by the warranties issued with each vehicle.

124.    Defendant represented that these vehicles are/were of a particular standard, quality, or grade, and that they were not defective, when in fact they were at the time of original purchase.

125.        (a)      Defendant made a false representation or knowing omission of a presently existing or past fact[6];

(b)      Defendant had exclusive knowledge of material facts not known to Plaintiffs, and therefore knew its representations or omissions were false, incomplete and/or misleading;

(c)      Defendant intended for Plaintiffs to rely on the representation or omission;

(d)      Plaintiffs justifiably and reasonably relied on Defendant's deceptive conduct, nondisclosure, misrepresentation or omission[7];

(e)      Defendant had an obligation to disclose the omitted information because it concerned safety considerations, which are considered material to a reasonable

---

[6] Specifically, Defendant represented that the Class of Vehicles possess(ed) characteristics, benefits, uses and qualities which they do/did not possess.  Defendant represented that the Class of Vehicles were/are of a particular standard, quality and grade when they were/are not.  Defendant represented the Class of Vehicles, via advertising, with the intent not to sell them as advertised.  Finally, Defendant represented that transactions involving the Class of Vehicles conferred or involved rights, remedies and obligations, which it did/does not.

[7] Because Ford failed to inform its dealership network that it was under obligation, vis a vis the Express Warranty, to pay for any repairs, Plaintiffs reliance stems from the dealership network's reliance on Defendant's nondisclosure of that information, misrepresentation of its obligations and omission of liability.  The fact that Plaintiffs did not see the TSB is irrelevant.

consumer and because Defendant was in a superior position with respect to

bargaining power and product knowledge; and

(f)      As a result, Plaintiffs have been harmed.

126.    California's consumer protection statute, known as the CLRA (California Civil Code §

1750, *et seq.*) has been violated by Defendant based on the foregoing.

WHEREFORE, Plaintiffs hereby demand damages from Defendant in an amount to be

determined at trail, plus interest and costs.

**COUNT VIII**
**COMMON LAW FRAUD and VIOLATIONS OF**
**ARKANSAS' DECEPTIVE TRADE PRACTICES ACT ("ADTPA")**
**[Statewide Class Action - Arkansas]**

127.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if

fully set forth herein.

128.    During the calendar years 2005 through 2012, the defendant learned of hundreds, if not

thousands, of customer complaints regarding the poor performance of the Class of Vehicles

identified herein, including specifically, complaints of acceleration hesitation, loss of RPM,

stalling, loss of power, sudden and intermittent deceleration, and other similar operational

malfunctions. These complaints were made directly to Defendant and/or submitted to the

National Highway Traffic Safety Administration, Office of Defect Investigation.

129.    During the calendar year 2006, the defendant, with knowledge that its vehicles equipped

with a 5.4L engine were experiencing or could experience sudden acceleration hesitation, loss of

RPM, stalling, loss of power, or sudden and intermittent deceleration, issued a series of TSBs

(known colloquially in the industry as a "silent recall") to notify its dealership network of the necessary service procedures required to rectify these symptoms and complaints.

130.    While the defendant was fully aware by 2006 of the aforementioned defects causing the malfunction of vehicles equipped with the aforementioned engine, Defendant engaged in deceptive conduct, unconscionable commercial practices, fraud, or knowing concealment, nondisclosure, suppression or omission of material facts with the intent that others rely upon such concealment, nondisclosure, suppression, and/or omission.

131.    While the defendant was fully aware by 2006 that the vehicle models in question and/or the component parts at issue were defective and that, therefore, a breach of the aforementioned warranties had materialized, the defendant failed to notify each and every owner/class member of these breach of warranties and/or it concealed this information from those consumers that the defendant knew relied upon the defendant to provide notice of such defects.

132.    In an effort to avoid liability for the breach of the aforementioned express warranties, the defendant hid from the public and the plaintiffs its knowledge of the defects in question with the intent of avoiding liability for the breach of warranties.

133.    Defendant's intentional issuance of the TSBs beginning in 2006 constituted a blatant attempt to avoid its responsibility to notify all Plaintiffs of the defects and breach of express warranty.  A TSB, by its very informal nature, does not constitute a public disclosure.

134.    The defendant knowingly concealed the defects in the Class of Vehicles from all Plaintiffs, with the intent of avoiding financial responsibility to service, repair and/or replace pertinent components.

135.    As part of its on-going intent to conceal the defects in question, the defendant has refused to honor or notify dealers of the existent breach of warranties, causing owners to have to pay for the repairs necessitated by these defects.

136.    The defendant affirmatively acted to conceal the defects at issue and intentionally failed to disclose the defects to Plaintiffs. This misconduct arose by Defendant's silence as well as its advice to its dealership network that the repairs and/or replacements required were not covered by the warranties issued with each vehicle.

137.    Defendant represented that these vehicles are/were of a particular standard, quality, or grade, and that they were not defective, when in fact they were at the time of original purchase.

138.    (a)    Defendant made a false representation or knowing omission of a presently existing or past fact[8];

(b)    Defendant had exclusive knowledge of material facts not known to Plaintiffs, and therefore knew its representations or omissions were false, incomplete and/or misleading;

(c)    Defendant intended for Plaintiffs to rely on the representation or omission;

---

[8] Specifically, Defendant represented that the Class of Vehicles possess(ed) characteristics, benefits, uses and qualities which they do/did not possess.  Defendant represented that the Class of Vehicles were/are of a particular standard, quality and grade when they were/are not.  Defendant represented the Class of Vehicles, via advertising, with the intent not to sell them as advertised.  Finally, Defendant represented that transactions involving the Class of Vehicles conferred or involved rights, remedies and obligations, which it did/does not.

(d)     Defendant deception occurred in the course of conduct involving trade and commerce;

(e)     Plaintiffs justifiably and reasonably relied on Defendant's deceptive conduct, nondisclosure, misrepresentation or omission[9];

(f)     Defendant had an obligation to disclose the omitted information because it concerned safety considerations, which are considered material to a reasonable consumer and because Defendant was in a superior position with respect to bargaining power and product knowledge; and

(g)     As a result, Plaintiffs have been harmed.

139.    Arkansas's consumer protection statute, known as the ADTPA, has been violated by Defendant based on the foregoing.  Specifically, § 4-88-107 (Deceptive and unconscionable trade practices generally) and § 4-88-108 (Concealment, suppression, or omission of material facts) of the statute have been violated. Defendant demonstrated a defective product, making false representations about same; engaging in fraud, false pretense and concealing material facts about their defective vehicles, with the intent that Arkansas consumers rely on their deceptions and concealments.

140.    Defendant's violation of Arkansas consumer protection statute was the proximate cause of Plaintiffs' injuries.

---

[9] Because Ford failed to inform its dealership network that it was under obligation, vis a vis the Express Warranty, to pay for any repairs, Plaintiffs reliance stems from the dealership network's reliance on Defendant's nondisclosure of that information, misrepresentation of its obligations and omission of liability.  The fact that Plaintiffs did not see the TSB is irrelevant.

WHEREFORE, Plaintiffs hereby demand damages from Defendant in an amount to be determined at trail, plus interest and costs.

## COUNT IX
## NEGLIGENT MISREPRESENTATION
### [Statewide Class Action -Pennsylvania]

141.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

142.    Defendant and/or its dealership network representatives have routinely misrepresented the true facts of the cause for the symptoms referenced above and, in doing so; it has denied warranty claims alleging that the referenced malfunctions are not related to systems or parts subject to warranties.

143.    Defendant has omitted factual information and intentionally withheld advising the Plaintiffs that their vehicles contain a defect in the PCM, TCM, ETC and/or Throttle Body Assembly which constitutes a negligent misrepresentation.

144.    Defendant's omissions and misrepresentations were intended to circumvent its obligation to honor the warranties issued with each vehicle sold.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## COUNT X
## NEGLIGENT MISREPRESENTATION
### [Statewide Class Action - Illinois]

145.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

146.    Defendant and/or its dealership network representatives have routinely misrepresented the true facts of the cause for the symptoms referenced above and, in doing so; it has denied warranty claims alleging that the referenced malfunctions are not related to systems or parts subject to warranties.

147.    Defendant has omitted factual information and intentionally withheld advising the Plaintiffs that their vehicles contain a defect in the PCM, TCM, ETC and/or Throttle Body Assembly which constitutes a negligent misrepresentation.

148.    Defendant's omissions and misrepresentations were intended to circumvent its obligation to honor the warranties issued with each vehicle sold.

    WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## COUNT XI
## NEGLIGENT MISREPRESENTATION
### [Statewide Class Action - California]

149.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

150.    Defendant and/or its dealership network representatives have routinely misrepresented the true facts of the cause for the symptoms referenced above and, in doing so; it has denied warranty claims alleging that the referenced malfunctions are not related to systems or parts subject to warranties.

151.    Defendant has omitted factual information and intentionally withheld advising the Plaintiffs that their vehicles contain a defect in the PCM, TCM, ETC and/or Throttle Body Assembly which constitutes a negligent misrepresentation.

152.    Defendant's omissions and misrepresentations were intended to circumvent its obligation to honor the warranties issued with each vehicle sold.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## COUNT XII
## UNJUST ENRICHMENT
### [Statewide Class Action - Pennsylvania]

153.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

154.    Defendant manufactured and sold the Class of Vehicles with the defects as described herein.

155.    Defendant had actual knowledge of the defects several years ago when consumers began lodging complaints with Defendant and/or the National Highway Traffic Safety Administration, Office of Defect Investigation.

156.    Despite its knowledge, Defendant failed to disclose the existence of the defects and/or breach of express warranties to the plaintiffs when they had their defective vehicles repaired.

157.    Recovery is sought by the Plaintiffs who have paid for the repair of these defective components, and have therefore conferred a benefit upon Defendant, without knowledge of the defective components of their vehicles.

158.    Defendant accepted and retained the benefit conferred by Plaintiffs, despite their knowledge of the defects and their knowledge of their violation of the express warranties of these vehicles.

159.    Retaining the non-gratuitous benefits conferred upon Defendant was unjust and inequitable.   Therefore, Defendant is liable for the payment of restitution of the benefits it retained.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

**COUNT XIII**
**UNJUST ENRICHMENT**
**[Statewide Class Action – New Jersey]**

160.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

161.     Defendant manufactured and sold the Class of Vehicles with the defects as described herein.

162.     Defendant had actual knowledge of the defects several years ago when consumers began lodging complaints with Defendant and/or the National Highway Traffic Safety Administration, Office of Defect Investigation.

163.     Despite its knowledge, Defendant failed to disclose the existence of the defects and/or breach of express warranties to the plaintiffs when they had their defective vehicles repaired.

164.     Recovery is sought by the Plaintiffs who have paid for the repair of these defective components, and have therefore conferred a benefit upon Defendant, without knowledge of the defective components of their vehicles.

165.     Defendant accepted and retained the benefit conferred by Plaintiffs, despite their knowledge of the defects and their knowledge of their violation of the express warranties of these vehicles.

166.    Retaining the non-gratuitous benefits conferred upon Defendant was unjust and inequitable.   Therefore, Defendant is liable for the payment of restitution of the benefits it retained.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## COUNT IXV
## UNJUST ENRICHMENT
### [Statewide Class Action - Illinois]

167.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

168.    Defendant manufactured and sold the Class of Vehicles with the defects as described herein.

169.    Defendant had actual knowledge of the defects several years ago when consumers began lodging complaints with Defendant and/or the National Highway Traffic Safety Administration, Office of Defect Investigation.

170.    Despite its knowledge, Defendant failed to disclose the existence of the defects and/or breach of express warranties to the plaintiffs when they had their defective vehicles repaired.

171.    Recovery is sought by the Plaintiffs who have paid for the repair of these defective components, and have therefore conferred a benefit upon Defendant, without knowledge of the defective components of their vehicles.

172.    Defendant accepted and retained the benefit conferred by Plaintiffs, despite their knowledge of the defects and their knowledge of their violation of the express warranties of these vehicles.

173.    Retaining the non-gratuitous benefits conferred upon Defendant was unjust and inequitable.   Therefore, Defendant is liable for the payment of restitution of the benefits it retained.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

**COUNT XV**
**UNJUST ENRICHMENT**
**[Statewide Class Action – Arkansas]**

174.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

175.    Defendant manufactured and sold the Class of Vehicles with the defects as described herein.

176.    Defendant had actual knowledge of the defects several years ago when consumers began lodging complaints with Defendant and/or the National Highway Traffic Safety Administration, Office of Defect Investigation.

177.    Despite its knowledge, Defendant failed to disclose the existence of the defects and/or breach of express warranties to the plaintiffs when they had their defective vehicles repaired.

178.    Recovery is sought by the Plaintiffs who have paid for the repair of these defective components, and have therefore conferred a benefit upon Defendant, without knowledge of the defective components of their vehicles.

179.    Defendant accepted and retained the benefit conferred by Plaintiffs, despite their knowledge of the defects and their knowledge of their violation of the express warranties of these vehicles.

180.    Retaining the non-gratuitous benefits conferred upon Defendant was unjust and inequitable.   Therefore, Defendant is liable for the payment of restitution of the benefits it retained.

        WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

### COUNT XVI
### QUASI-CONTRACT RECOVERY/RESTITUTION
### [Statewide Class Action – California]

181.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

182.    Defendant manufactured and sold the Class of Vehicles with the defects as described herein.

183.    Defendant had actual knowledge of the defects several years ago when consumers began lodging complaints with Defendant and/or the National Highway Traffic Safety Administration, Office of Defect Investigation.

184.   Despite its knowledge, Defendant failed to disclose the existence of the defects and/or breach of express warranties to the plaintiffs when they had their defective vehicles repaired.

185.   Recovery is sought by the Plaintiffs who have paid for the repair of these defective components, and have therefore conferred a benefit upon Defendant, without knowledge of the defective components of their vehicles.

186.   Defendant accepted and retained the benefit conferred by Plaintiffs, despite their knowledge of the defects and their knowledge of their violation of the express warranties of these vehicles.

187.   Retaining the non-gratuitous benefits conferred upon Defendant was unjust and inequitable.   Therefore, Defendant is liable for the payment of restitution of the benefits it retained.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

### COUNT XVII
### SPECIFIC DAMAGES SOUGHT –
### INJUNCTIVE RELIEF
### [Nationwide Class Action]

188.   Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

189.   The national class seeks injunctive relief, requiring Defendant to do as follows:

(1) Notify all members of the putative class of the aforementioned defects;

(2) Institute a comprehensive recall and/or repair of the Class of Vehicles;

41

(3) Inspect all Class of Vehicles currently owned or leased by members of the putative class to determine the nature and extent of the defects and necessary repairs for each vehicle inspected;

(4) Fully and properly repair all Class of Vehicles, as required, at Defendant's full expense; and

(5) Take all necessary steps to modify the design, manufacture, and quality control for the Class of Vehicles, to prevent the aforesaid defects from arising in any future Class of Vehicles.

190.    Plaintiffs are reasonably likely to prevail in this litigation, particularly in light of the fact that most of their vehicles are still covered under the express warranties.

191.    Plaintiffs are likely to suffer irreparable harm without the requested relief.   When the defects arise, the Class of Vehicles becomes completely inoperable and unsafe.

192.    The requested relief would not harm the defendant more than denial would harm the plaintiffs.   The cost of each repair is *de minimus* when compared to the potential harm to Plaintiffs, putative class members and the public.

193.    Granting this injunctive relief serves the public interest in not having dangerous and defective vehicles, capable of losing power, brakes and steering capabilities, careening out of control on the streets.

WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.  Out of pocket expenditures related to the costs to replace/repair the defects;

B.  Diminution in value of the Class of Vehicles attributable to the defects;

C.  For punitive and exemplary damages, where applicable;

D.  For all applicable statutory damages under each states' consumer protection laws;

E.  Injunctive relief – recall, repair and/or replace the defective parts (as set forth more fully in section XVII above);

F.  For an award of attorneys' fees and costs;

G.  An award of prejudgment interest and costs of suit; and

H.  An award of such other and further relief as the Court deems just and proper.

## JURY DEMANDED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury.

Dated: February 26, 2013

Larry E. Coben, Esquire (ID #17523)

Sol H. Weiss, Esquire (ID #15925)

Julie P. Thompson, Esquire (ID #91418)

*Attorneys for the Plaintiffs*
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215.735.1130

44

## CERTIFICATE OF SERVICE

I, Julie P. Thompson, Esquire, hereby certify that on this 26th day of February, 2013, the

foregoing *Plaintiffs' First Amended Civil Class Action Complaint* was filed with the Clerk of the

United States District Court for the Eastern District of Pennsylvania.  I hereby certify that a true

and correct copy of same was provided to Defendant, via its counsel, at the following

addresses/E-mail:


J. Tracy Walker, IV, Esquire
**McGuireWoods LLP**
One James Center
901 East Cary Street
Richmond, VA 23219-4030
(804) 775-1131
twalker@mcguirewoods.com
*Via E-Mail and First Class Mail*


Emily J. Stockwell, Esquire
William J. Conroy, Esquire
Tiffany M. Alexander, Esquire
**Campbell Campbell Edwards & Conroy, P.C.**
1205 Westlakes Drive
Suite 330
Berwyn, PA  19312
(610) 964-1900
*Via First-Class Mail*


Dated: February 26, 2013

/s/ Julie P. Thompson
Larry E. Coben, Esquire (I.D. 17523)
Sol H. Weiss, Esquire (I.D. 15925)
Julie P. Thompson, Esquire (I.D. 91418)
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, Pennsylvania 19103
(215) 735-1130 Telephone
*Attorneys for Plaintiffs*