IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON SCHMIDT, et al., on behalf     :     CIVIL ACTION
of themselves and all others         :     NO. 12-7222
similarly situated,                  :
                                     :
          Plaintiffs,                :
                                     :
     v.                              :
                                     :
FORD MOTOR COMPANY,                  :
                                     :
          Defendant.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      September 20, 2013


          Ford Motor Company (Defendant) moves to dismiss

various counts in the present Complaint: Count I—breach of

express warranty—as to all but Jason Schmidt; Counts II, IV, and

V—claims of breach of implied warranty under Pennsylvania,

California, and Arkansas law, respectively; Counts VI, VII, and

VIII—claims of fraud and violations of Pennsylvania, California,

and Arkansas state consumer protection laws, respectively;

Counts IX, X, and XI—claims of negligent misrepresentation under

Pennsylvania, Illinois, and California law, respectively; and

Counts XII, XIII, and XV—claims of unjust enrichment/restitution

under Pennsylvania, New Jersey, and Arkansas laws, respectively.[1]

_____

[1]     Defendant does not move to dismiss Count I as to Jason
Schmidt, Count II (Jason Schmidt's breach-of-implied-warranty

For the reasons that follow, the Court will grant the motion and
dismiss Count I as to all plaintiffs save Jason Schmidt, as well
as Counts II, IV-XIII, and XV.

## I.   BACKGROUND

Seven named plaintiffs (hereinafter Plaintiffs) seek
recovery for a national class of consumers alleging breach of
express warranty, and each individual plaintiff seeks recovery
for a statewide class wherein he or she is domiciled, seeking
relief for breach of implied warranty, common law fraud and
violations of respective state consumer protection statutes,
negligent misrepresentation, and/or unjust enrichment. Both
monetary and injunctive relief are sought. Amend. Compl. ¶ 1,
ECF No. 16.

Plaintiffs allege that, between 2004 and 2008,
Defendant manufactured, assembled, and marketed a class of
vehicles equipped with 5.4 L V8 engines. Id. ¶ 3. Plaintiffs
further allege these engines contain latent defects that cause
the fitted vehicles to experience, inter alia, acceleration
hesitation, loss of revolutions per minute, stalling, loss of
power, and sudden and intermittent deceleration. Id. ¶ 4.
Plaintiffs further allege that one of five engine components

claim), Count XIV (Stephen Gooder's unjust-enrichment claim),
Count XVI (Lee Pullen's quasi-contract claim), or Count XVII
(the request for injunctive relief).

could be the source of the malfunctions: the Powertrain Control
Module (PCM), the Transmission Control Module (TCM), the
Electronic Throttle Control (ETC), or the Throttle Body Assembly
(TBA). Id. ¶ 5. Defendant issued five technical service
bulletins (TSBs) to notify its dealership network of the
procedures necessary to fix the problem. Id. ¶ 7. Plaintiffs
claim a federally mandated warranty covers the engines in
question. Id. ¶ 65. The alleged warranty is valid for the first
eight years of the vehicle's life or for the first 80,000 miles
driven, whichever comes first. Id. ¶¶ 15, 65.

      The named plaintiffs are Jason and Nicholas Schmidt,
Stephen Gooder, Frank Kurian, Lee Pullen, and Victor and Keesha
Rose. Jason Schmidt is a New Jersey resident who purchased a
used 2005 Ford Explorer in 2012. Id. ¶ 48. The vehicle has
approximately 66,000 on the odometer. Id. Once while he was
driving on a highway, his Explorer malfunctioned and completely
lost power, although he safely stopped the vehicle on the
shoulder. Id. ¶ 20. He brought the Explorer to a Ford
dealership, explained the issue, and was told that the PCM
needed replacing, but that there was no applicable warranty to
cover the repair cost. Id. ¶ 21. He then contacted the National
Highway Traffic Safety Administration (NHTSA) and lodged a
complaint concerning the malfunction. Id. ¶ 22. He further
alleges that an online search revealed that the issue he

3

experienced was "pervasive to the Class of Vehicles." Id. ¶ 22.
He also emailed Ford's vice president to explain the engine
defect and received a telephone call shortly afterward informing
him of his "case number with Ford," although he was not offered
a refund during the call. Id. ¶ 24.

Nicholas Schmidt is also a New Jersey resident who
purchased a used 2004 Lincoln Navigator in 2007. The vehicle has
approximately 69,500 miles on the odometer. No defects have
manifested in the vehicle. Id. ¶ 40. Nonetheless, he claims that
the existence of a latent defect reduced the value and
usefulness of his vehicle and caused him to overpay for his
vehicle. Id.

Frank Kurian is a Pennsylvania resident, id. ¶ 49, who
purchased a used 2005 Ford F-150 truck in 2012 that has
approximately 125,000 miles on the odometer, id. He does not
seek recovery under theories of breach of express warranty or
unjust enrichment. Id. No defect has manifested in his vehicle,
although he also alleges that, due to the defect's latency, he
overpaid for his vehicle and it suffered a reduction in
usefulness and value. Id.

Lee Pullen is a California Resident, id. ¶ 50, who
purchased a used 2005 Ford expedition in 2009 that has
approximately 94,000 miles on the odometer. Id. He alleges that
because he was never informed of any applicability warranty

4

covering the costs of repair, he paid out-of-pocket to replace the vehicle's throttle body at Gregg's Mission Viejo Mobil in California. Id.

Victor and Keesha Rose are Arkansas residents who purchased a used 2005 Ford Expedition in 2008 that has approximately 94,000 miles on the odometer. Id. ¶ 51. They do not seek recovery under theories of breach of warranty, negligent misrepresentation, or restitution. They do not seek recovery under theories of breach of warranty, negligent misrepresentation, or restitution. Id. They allege that a defect has manifested itself in their vehicle, causing losses of power during its operation. Id. They do not allege that they attempted to fix the issue or that they suffered out-of-pocket expenses because of the defect.

Stephen Gooder is an Illinois resident who purchased a 2005 Ford Expedition in October, 2012. Id. ¶ 53. His vehicle has approximately 122,287 miles on the odometer. Id. On December 1, 2012, he alleges that his vehicle lost power while he was driving it. Id. ¶ 44. Although he safely guided the vehicle to a gas station parking lot, restarted the engine, and drove home without further incident, he claims he experienced the same problem at least six more times since then. Id. He took the vehicle to a Ford dealership where he paid out-of-pocket to replace the throttle body. Id. ¶ 45-46.

5

## II.  PROCEDURAL HISTORY

On February 26, 2013, Plaintiffs filed the First Amended Complaint. First Am. Comp. ¶ 1, ECF No. 16. The First Amended Complaint asserts the following seventeen counts:

| | |
|---|---|
| Count I | Breach of express warranty |
| Counts II-V | Breach of implied warranty (PA, NJ, CA, AR respectively) |
| Counts VI-VIII | Common Law Fraud/Violation of Unfair Trade Practices and Consumer Protection Law (PA, CA, AR respectively) |
| Counts IX-XI | Negligent Misrepresentation (PA, IL, CA respectively) |
| Count XII-XV | Unjust Enrichment (PA, NJ, IL, AR respectively) |
| Count XVI | Quasi-Contract Recovery (CA) |
| Count XVII | Injunctive Relief—Nationwide Class Action |

First Am. Compl ¶¶ 62-193.

On March 13, 2013, Defendant filed a Motion to Dismiss Count I as to all but Jason Schmidt, as well as Counts II, IV, V-XIII, and XV. Def.'s Mot. to Dismiss 1, ECF No. 18. Plaintiffs responded. Pl.'s Resp. 1, ECF No. 22. The Court held a hearing on the Motion. The matter is now ripe for disposition.

III. **LEGAL STANDARD**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court

7

to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court has subject-matter jurisdiction over Plaintiffs' claims under the Class Action Fairness Act (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.) and 28 U.S.C. §§ 1332(d)(2) and 1453, as Plaintiffs bring state-law claim as part of a putative class action.

Federal courts sitting in diversity generally apply the substantive choice-of-law rules of the forum state, which is Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005). Here, pursuant to the agreement of the parties, the Court will apply the law of Plaintiffs' respective states of residence when evaluating the viability of their claims.

**IV.   DISCUSSION**

    A.   <u>Plaintiffs Failed to Plead Notice for Breach-of-Warranty Claims</u>

        Defendant moves to dismiss the breach-of-warranty claims of Frank Kurian, Lee Pullen, the Roses, and Nicholas Schmidt because these plaintiffs failed to plead notice pursuant to their respective state laws. Plaintiffs respond that their claims are governed by federal substantive law and not state law because Defendant's express warranty, which Plaintiffs attach to the First Amended Complaint, does not oblige vehicle owners to put Defendant on notice of any defect. <u>See</u> First Amend. Comp. Ex. B, at 22. Alternatively, Plaintiffs argue that they met the pre-suit notice requirement because Defendant received a plethora of consumer complaints directly and through the NHTSA about the exact same malfunctions described in the complaint, including Jason Schmidt's complaint. <u>See</u> <u>id.</u> ¶ 3, 14, 21-24. In any event, Plaintiffs argue, it is clear Defendant had notice of the defect prior to the lawsuit because it issued TSBs addressing the matter. For the foregoing reasons, the Court finds that state law governs the breach-of-warranty claims and the relevant plaintiffs failed to provide sufficient pre-suit notice.

Regarding Plaintiffs' argument that federal law governs their breach-of-warranty claims, Plaintiffs are incorrect for two reasons. First, the First Amended Complaint does not allege federal question jurisdiction, but diversity jurisdiction under the class action provisions of 28 U.S.C. § 1332(d). See id. ¶ 55. Plaintiffs cannot now attempt to amend the First Amended Complaint by adding a federal cause of action without leave of court, which they have not sought. Second, even if they were permitted to further amend the Complaint, they cite no federal statute or case law granting a federal right of action based on a breach of express warranty. Indeed, they cite only one case, Burton v. Chrysler Group L.L.C., in support of this proposition, but Burton stands in opposition—there, the court applied state law to the plaintiffs' breach-of-warranty claims. Civil Action No. 8:10-00209-JMC, 2012 WL 831843, at *3 (D.S.C. Mar. 12, 2012). Plaintiffs also cite a passage from the 2012 Ford Warranty Book, which states, in relevant part: "[T]aking your vehicle to any Ford Motor Company dealer as soon as possible after illumination of the Malfunction Indicator Light . . . ." Id. Ex. B, at 22. But a warranty book, without more, cannot open the door to the federal courts. What is more, the language Plaintiffs rely on apply to 2012 Ford model years, but none of Plaintiffs' vehicles were 2012 model year vehicles.

10

There are two possible sources for Plaintiffs'
"federal" warranty. First, the "Emission Performance Warranty"
mandated by 40 C.F.R. § 85.2101, <u>et seq.</u>, only guarantees that
vehicles in operation for less than 24 months or 24,000 miles
will pass EPA emissions tests. Plaintiffs do not allege that the
vehicles at issue failed those tests and all of the vehicles
involved are outside the warranty period. Indeed, the language
that Plaintiffs cite to Second, the "Design and Defect Warranty"
mandated by section 207(a) of the Clean Air Act, 42 U.S.C. §
7541(a), requires that manufacturers provide warranty coverage
for certain emissions-relates parts over the useful life of the
vehicle—in this case, 8 years or 80,000 miles. But Plaintiffs do
not allege that Defendant did not provide the required warranty,
which would be a statutory violation governed by federal law,
and, again, Plaintiffs rely only on diversity jurisdiction in
bringing their claims to federal court. Instead, Plaintiffs
allege that Defendant breached a warranty that included the
mandated coverage. This alleged breach is no different than the
alleged breach of any other warranty term and, accordingly,
state law governs Plaintiffs' breach-of-warranty claims.

Under the commercial law of all four relevant states—
Arkansas, California, Pennsylvania, and New Jersey, which all
have adopted Section 2607(c) of the U.C.C.—a plaintiff,
specifically a buyer, must provide notification of the alleged

11

product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory. See Ark. Code Ann. R. § 4-2-607(3)(a) (West 2013) ("The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); Cal. Com. Code § 2607(3)(A) (West 2013) (same); 13 Pa. Cons. Stat. Ann. § 2607(c)(1) (West 2013) (same); N.J. Stat. Ann. § 12A:2-607(3)(a)(West 2013) (same). "[T]he purpose of notification under § 2607(c) is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit." Am. Fed'n of State Cnty. & Mun. Emps. (AFSCME) v. Ortho-McNeil-Janssen Pharm., Inc., No. 08-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010). In context of a motion to dismiss, Plaintiffs must "plead, at a minimum, . . . that [she] provided reasonable notification . . . to state a viable claim for recovery . . . or be barred from any remedy." AFSCME, 2010 WL 591150, at *7 (internal quotation marks removed). Furthermore, actual or constructive notice of the defect on the part of the manufacturer is irrelevant; the plaintiff must provide notification independently.

Here, Plaintiffs, with the exception of Jason Schmidt, whose breach-of-warranty claims Defendant does not move to dismiss, have failed to allege that they provided pre-suit notice to Defendant of any alleged defect. While Plaintiffs do

12

allege that Defendant had knowledge of the defects through submitting TSBs and receiving consumer complaints directly through customers including Jason Schmidt and through the NHTSA, such allegations are insufficient to sustain the claims of other plaintiffs who (1) drove different vehicles with different model years, (2) purchased at different times, and (3) in different states.

   In response, Plaintiffs argue that notice by third parties can fulfill the notification requirement. Plaintiffs cite Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 682-83 (E.D. Pa. 2011), in support of their argument. In that case, the district court, while ratifying that notice was necessary to sustain a breach-of-warranty claim, held that notification of the manufacturer by other class members was sufficient to meet the notice requirement, regardless of the state in which they reside, because the defect at issue was common among all plaintiffs. See id. The Court does not find Martin's constructive-notice principle as applied to breach-of-warranty claims persuasive for two reasons. First, the Martin court overlooked the explicit text of § 2607(c)(1): "The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." A third party, although possibly "a" buyer, is not "the" buyer for purposes of the U.C.C. This is because, as

13

mentioned above, "the purpose of notification under § 2607(c) is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit." AFSCME, 2010 WL 591150, at *6. Under Martin's rule, buyers are able to thwart the purpose of § 2607(c) by relying on third-party notice and avoiding any attempt at pre-suit resolution.

Second, even assuming the validity of constructive notice in the breach-of-warranty setting, the present defect is easily distinguishable from Martin. There, the district court distinguished AFSCME, which found that constructive notice did not satisfy the notification requirement of § 2607(c)(1), by highlighting that the Martin putative class members' defect was common enough that third-party notice would provide the manufacturer with a sufficient opportunity to cure the defect. Martin, 765 F. Supp. 2d at 683. Here, Plaintiffs seek to recover based on different alleged defects in several different products, including Ford Expeditions, Ford F-150s, and Lincoln Navigators. See First Amend. Comp. ¶¶ 48-53. Moreover, to the extent that Plaintiffs argue that the 5.4L V8 engine and associated components are the products at issue, Plaintiffs have not alleged that identical components are used in each of those different vehicles. They have not pleaded themselves into the exception carved out by Martin.

14

The relevant Plaintiffs failed to plead notice with respect to their claims for breach of implied and express warranties.[2] Therefore, the Court will dismiss Counts II, IV, and V in their entirety and Counts I and III as to all but Jason Schmidt.

B.   Plaintiffs Fail to Plead Fraud, UTPCPL, and Negligent Misrepresentation Claims with Requisite Particularity

Defendant moves to dismiss the relevant Plaintiffs' fraud, UTPCPL, and negligent misrepresentation claims under Rule 9(b). All Plaintiffs except Jason and Nicholas Schmidt, New Jersey residents, bring said claims. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).[3] Rule 9(b) requires the following:

---

[2]     Because the Court dismisses the breach-of-warranty claims based on Plaintiffs' failure to provide sufficient notice, there is no need to determine whether pleading a materialization of a defect is necessary for breach-of-implied-warranty claims under Pennsylvania and New Jersey law to proceed.

[3]     There is currently a disagreement among district courts in the Third Circuit regarding whether Rule 9(b) applies to claims based on negligent misrepresentation. Compare Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 142 (E.D. Pa. 2007) ("The particularity requirement of Rule 9(b) applies to claims of negligent misrepresentation."), with Brandow Chrysler Jeep Co. v. DataScan Techs., 511 F. Supp. 2d 529, 537 (E.D. Pa. 2007) ("Rule 9(b) does not govern claims of negligent misrepresentation."). Even courts that have held that Rule 9(b)

> [A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged. To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and editorial marks and citation removed). "The purpose of Rule 9(b) is to provide a defendant with notice of the precise misconduct with which he or she is charged and to prevent false or unsubstantiated charges." Cooper v. Broadspire Servs., Inc., No. Civ. A. 04-5289, 2005 WL 1712390, at *5 (E.D. Pa. 2005).

The relevant Plaintiffs fail to allege claims of fraud or negligent misrepresentation with sufficient particularity. They claim that Defendant should have informed them or its dealership network that the repairs they seek are covered by an express warranty. See First Amend. Compl. ¶ 28 n.7. They plead, in the fashion of a formulaic recitation of the elements of their fraud-related causes of action, that they "justifiably and

---

does not apply to negligent misrepresentation, however, have noted that "a plaintiff must nonetheless plead negligent misrepresentation with a degree of specificity." Scott v. Bimbo Bakeries, USA, Inc., Civil Action No. 10-3154, 2012 WL 645905, at *5 (E.D. Pa. Feb. 29, 2011). The First Amended Complaint does not meet even this lesser degree of specificity regarding the negligent misrepresentation claims, so the resolution of this dispute is immaterial to the outcome of this case.

reasonably relied on Defendant's deceptive conduct, nondisclosure, misrepresentation, or omission." <u>See</u> <u>id.</u> ¶ 125(d). But they fail to plead any facts or circumstances that might support this bare allegation of justifiable reliance. No facts are pled regarding (1) when, where, and from whom Plaintiffs purchased or otherwise acquired their vehicles; (2) what, if any, Ford employees were involved in those transactions; and (3) any particular information on how Plaintiffs who did not actually pay for repairs have been harmed by the omissions. For example, Lee Pullen does not allege how he came to own his Ford Expedition, what Ford employees were involved in the purchase, when the purchase occurred, or from what (if any) Ford Dealer. <u>See</u> <u>id.</u> ¶ 32. Moreover, he pleads that the repairs to his vehicle were performed by a Mobil station, not a Ford dealer. <u>See</u> <u>id.</u> Determining how he relied on any omission or representation from Ford is an exercise left to the reader. The same goes for Nicholas Schmidt, the Rosens, and Frank Kurian—their vehicles are out of warranty and they have not requested repair. <u>See</u> <u>id.</u> ¶¶ 26, 28.

Furthermore, the relevant Plaintiffs fail to address the fact that none of their vehicles qualified for the express warranty to which they cite in the First Amended Complaint. Stephen Gooder comes the closest to adequately pleading fraud and negligent misrepresentation—he supplies some information

17

regarding the circumstances of his vehicle's repair—but the vehicle was out of warranty. <u>See</u> First Am. Compl. ¶¶ 41-42, 46.

Plaintiffs fail to allege facts supporting the nature of their reliance. Plaintiffs fail to allege facts indicating the date, time, and place of the alleged fraud, or, alternatively, inject any precision or measure of substantiation into her fraud allegations that would "place the defendant on notice of the precise misconduct with which it is charged." <u>Frederico</u>, 507 F.3d at 200.[4] Therefore, the Court will dismiss Counts VI through XI of the First Amended Complaint with prejudice.[5]

---

[4]     Because the Court disposes of the fraud/UTPCPL and negligent misrepresentation claims based on Rule 9(b), there is no need to determine whether they are barred by the economic-loss rule.

[5]     Although Plaintiffs do not request to amend for a second time, under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court has considered whether leave to amend in this case should be granted in the interest of justice. Fed. R. Civ. P. 15(a)(2). "In the absence of substantial or undue prejudice, denial [of a motion to amend] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." <u>Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc.</u>, 663 F.2d 419, 425 (3d Cir. 1981) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

In this case, the Court has provided Plaintiffs an opportunity to amend the Complaint, and they were on notice of the deficiencies concerning the lack of particularity in pleading fraud and negligent misrepresentation prior to amending. <u>See</u> Def.'s Mot. to Dismiss Pls.' Comp 11-16, ECF No. 12. Nevertheless, they failed to cure the deficiencies.

C.   <u>Plaintiffs Fail To Allege They Conferred a Benefit on Defendant To Support Their Unjust Enrichment Claims</u>

Under the relevant state laws—Pennsylvania, New Jersey, and Arkansas—the heart of a claim for unjust enrichment is that "the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." <u>Hershey Foods Corp. v. Ralph Chapek, Inc.</u>, 828 F.2d 989, 999 (3d Cir. 1987); <u>accord</u> <u>Sanders v. Bradley Cnty. Human Servs. Pub. Facilities Bd.</u>, 956 S.W.2d 187, 192 (Ark. 1997); <u>VRG Corp. v. GKN Realty Corp.</u>, 641 A.2d 519, 555 (N.J. 1994). The "benefit" must be conferred by the plaintiff directly—indirect benefits bestowed by third parties will not support a claim for unjust enrichment. <u>See</u> <u>Bridgestone/Firestone, Inc. v. Carr's Tire Serv., Inc.</u>, Civ. A. No. 90-7106, 1992 WL 365512, at *16 (E.D. Pa. Nov. 30, 1992); <u>see also</u> <u>Samuels v. Hendricks</u>, 445 A.2d 1273, 1276 (Pa. Super. Ct. 1982) ("[T]he mere fact that [defendant] may have indirectly benefited from [plaintiff's]

---

Furthermore, Plaintiffs' argument that lack of discovery shields them from heightened pleading requirements is not persuasive—all the additional information necessary to substantiate the fraud and negligent misrepresentation allegations in the First Amended Complaint, assuming it exists, is in their hands. They had the opportunity to include such information in both the Complaint and First Amended Complaint, but neglected to do so. Therefore, even if Plaintiffs had requested leave to amend, they would not be entitled to do so a second time.

performance is not sufficient to impose upon her a duty to make restitution."); Grisanti v. Zanone, 336 S.W.3d 886, 890 (Ark. Ct. App. 2009) ("In general, recovery for unjust enrichment is based upon what the person enriched has received rather than what the opposing party has lost.").

Here, the relevant Plaintiffs plead no facts establishing that Frank Kurian, the Roses, or Nicholas Schmidt ever conferred a direct benefit on Defendants as is required to support an unjust-enrichment claim under the law of each of their respective states. They only make bare allegations that they have conferred a benefit on Defendant. None of the relevant Plaintiffs, however, actually paid for any repairs to their vehicles. See First Amended Compl. ¶¶ 28, 36, 40. Furthermore, these Plaintiffs do not even allege that they purchased their vehicles from Defendant or one of Defendant's dealers. See id. at 25-28, 33-40. They fail to show any way in which their money transferred from their own pockets to Defendant's. Therefore, the Court will dismiss Counts XII, XIII, and XV.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss and dismiss Counts I and III of the First Amended Complaint as to all Plaintiffs save Jason Schmidt and Counts II, IV-XIII, and XV in their entirety. Defendant did not

20

move to dismiss Plaintiff's claims of express and implied breach of warranty as to Jason Schmidt (Counts I and III), Stephen Gooder's unjust-enrichment claim under Illinois law (Count XIV), Lee Pullen's quasi-contract claim under California law (Count XVI), and the nationwide injunction claim (Count XVII) which, accordingly, remain in this action.