IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON SCHMIDT, et al.,           :     CIVIL ACTION
                                 :     NO. 12-7222
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
FORD MOTOR COMPANY,              :
                                 :
          Defendant.             :
                                 :
DEBORAH GILL, et al.,            :     CIVIL ACTION
                                 :     NO. 13-7254
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
FORD MOTOR COMPANY,              :
                                 :
          Defendant.             :
                                 :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    August 1, 2016

**Table of Contents**

I.    INTRODUCTION........................................... 2

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY................ 4

      A.   The Electronic Throttle Body........................ 4

      B.   Schmidt v. Ford Motor Company....................... 5

      C.   Gill v. Ford Motor Company.......................... 7

      D.   Consolidation....................................... 8

III.  LEGAL STANDARD......................................... 9

IV.   APPLICABLE LAW......................................... 10

V.    DISCUSSION............................................. 11

A.   Schmidt and the Gills' breach of express warranty
     claim............................................... 12

     1.   Breach of Express Warranty.................... 12

          a.   The warranties' terms are clear and
               unambiguous............................... 13

          b.   Any express warranty applicable to
               Plaintiffs' claims expired by the time
               Plaintiffs' claims arose.................. 20

     2.   Reliance on the Warranties.................... 27

B.   Breach of Implied Warranty........................... 30

C.   Unjust Enrichment.................................... 34

VI.  CONCLUSION............................................ 42

## I.  INTRODUCTION

Before the Court are two consolidated actions arising
from Plaintiffs Jason Schmidt, Stephen Gooder, and Samuel and
Deborah Gill's product liability claims against Defendant Ford
Motor Company. Plaintiffs are the owners of 2005 Ford
Expeditions with 5.4L V8 engines. According to the Complaint,
these vehicles and their engines contain a defect in the
throttle bodies, which causes a loss of power during
acceleration. Plaintiffs now seek monetary and injunctive relief
on behalf of a class of similarly situated consumers.

At this juncture, the following claims remain[1] in the
consolidated actions: (1) the Schmidt's claims of breach of

_____

[1]      Nine counts were originally asserted in the Schmidt
Amended Complaint: breach of express warranty (Count I), breach
of implied warranty (Counts II-V), common law fraud/violation of

express and implied warranties; (2) the Gills' claims for breach

of express and implied warranties; and (3) Gooder's claim for

unjust enrichment. Ford now moves for summary judgment as to all

remaining claims. For the reasons that follow, the Court will

grant the motion and enter judgment in favor of Ford as to all

claims.

---

Pennsylvania's Unfair Trade Practices and Consumer Protection
Law (Counts VI-VIII), negligent misrepresentation (Counts IX-
XI), unjust enrichment (Counts XII-XV), quasi-contract (Count
XVI), and injunctive relief (Count XVII). Schmidt v. Ford Motor
Co., 972 F. Supp. 2d 712, 716 (E.D. Pa. 2013).

    The Court previously granted Ford's Motion to Dismiss
the Amended Complaint in Schmidt, dismissing Counts I and III as
to all Plaintiffs save Jason Schmidt and Counts II, IV-XIII, and
XV in their entirety. Id. at 722. Defendant did not move to
dismiss the breach of express and implied warranty claims as to
Jason Schmidt (Counts I and III), Stephen Gooder's unjust
enrichment claim (Count XIV), Lee Pullen's quasi-contract claim
(Count XVI), and the nationwide injunction claim (Count XVII).
Id.

    Five counts were originally asserted in the Gill
Amended Complaint: breach of express warranty (Count I), breach
of implied warranty (Count II), common law fraud (Count III),
quasi-contract/unjust enrichment/restitution (Count IV), and
injunctive relief (Count V). Gill v. Ford Motor Co., No. 13-
7254, 2014 WL 2805250, at *1 (E.D. Pa. June 20, 2014). The Court
previously granted Ford's Motion to Dismiss the Amended
Complaint and dismissed Counts III and IV. Id. at *4.

## II.  FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

### A.  The Electronic Throttle Body

Between 2004 and 2008, Defendant manufactured, assembled, and marketed the Ford Expedition, which contained an engine equipped with a common Electronic Throttle Control System ("ETC") and Throttle Position Sensor ("TPS"). van Schoor Rep. 13, ECF No. 74-24[3] (discussing ETC system installed in the 2004-2008 Ford 5.4L V8 engine); Kuhn Rep. 1, 3-4, ECF No. 74-16; Kitchen Rep. 3, ECF No. 74-17. The ETC consists of the Accelerator Pedal Position Sensors, the Powertrain Control Module, and the Electronic Throttle Body ("ETB" or "throttle body"). Kitchen Rep. 10-11, ECF No. 74-17; Salcone Rep. 1, ECF No. 74-21. The ETC enhances engine and vehicle performance by using an electronic system, instead of a mechanical connection like a cable, to control the delivery of air and fuel to the engine when the driver demands engine power by depressing the

---

[2]     Unless otherwise noted, the facts recited herein are those that the parties do not dispute. Those that the parties do dispute are viewed in the light most favorable to Plaintiffs as the nonmoving party.

[3]     ECF citations after consolidation correspond to the Schmidt action, located at Docket No. 12-7222. Citations prior to consolidation correspond to the Schmidt and Gill cases separately:  Schmidt's and Gooder's claims derive from Docket No. 12-7222, while the Gills' claims derive from Docket No. 13-7254.

accelerator pedal. Kitchen Rep. 11, ECF No. 74-17; van Schoor

Suppl. Rep. 5, ECF No. 74-25.

     B.    <u>Schmidt v. Ford Motor Company</u>

       The <u>Schmidt</u> action was initiated on December 27, 2012.

ECF No. 1. Following the Court's decision to grant in part and

deny in part Ford's motion to dismiss,[4] only Jason Schmidt's

claims for breach of express and implied warranties, and Stephen

Gooder's claim for unjust enrichment now remain.[5] ECF No. 35.

       Jason Schmidt is a New Jersey resident who purchased a

used 2005 Ford Explorer in 2012 from North Penn Imports, Inc.,

in Pennsylvania. ECF No. 74-2. The vehicle had been initially

delivered to the dealership by Ford on April 13, 2005. ECF No.

74-5. It had one prior owner. Schmidt Dep. 28:1-7, ECF No. 74-3.

The vehicle's mileage was 61,020 at the time of Schmidt's

purchase. ECF No. 74-2. He did not review any warranty materials

from Ford before the purchase. Schmidt Dep. 37:5-7, ECF No. 74-

3.

---

[4]     <u>See</u> <u>supra</u> n.1.

[5]     Plaintiff Lee Pullen's quasi-contract claim was also
permitted to proceed. But the parties have since stipulated to
the dismissal of Plaintiff Pullen and his claims from the case,
ECF No. 78, which the Court approved, ECF No. 79. Plaintiff
Pullen was expected to act in his representative capacity for
all similarly situated California residents and owners of like
vehicles. ECF No. 49, at 3.

On or about September 24, 2012, Schmidt lost power to his vehicle while driving. Id. 42:17-24. Schmidt took his vehicle to the closest Ford dealership, Holman Ford, for repair. Id. 61:24-62:9. Holman Ford advised Schmidt that the throttle body assembly required replacement, which would not be covered under Ford's warranties. Id. 57:15-22; 64:23-65:12. Because it was not covered, Schmidt paid $683.33 out of pocket for the repair. ECF No. 74-4.

Stephen Gooder is an Illinois resident who purchased a 2005 Ford Expedition in October 2011. ECF No. 74-11; Gooder Dep. 15:20-16:4, Nov. 21, 2013, ECF No. 81-5. At the time of purchase, the vehicle's mileage was either 110,000 or 122,000. ECF No. 74-11; Gooder Dep. 15:9-12, Nov. 21, 2013, ECF No. 81-5. The dealer provided Gooder with a thirty-day warranty, but Gooder neither recalled receiving nor expected to be provided with a warranty from Ford. Gooder Dep. 21:8-24, Nov. 21, 2013, ECF No. 81-5.

In October 2012, Gooder experienced a loss of power to his vehicle while driving. Id. 27:10-32:8. He brought the vehicle to Bryden Ford for repair but the diagnostic testing was inconclusive. Id. 27:1-9. Gooder paid $105.35 to Bryden Ford for the testing. Id. 33:16-34:1. Thereafter, Gooder experienced a loss of power three or four more times. Id. 34:22-35:12. Then, in February 2013, Bryden Ford replaced the throttle body

assembly on Gooder's vehicle. Id. 39:15-17. Gooder paid Bryden Ford $463.73 for the work. Id. 39:18-22. Gooder has never given any money to Ford Motor Company in relation to his purchase or ownership of the 2005 Expedition. Id. 34:6-12.

C.    Gill v. Ford Motor Company

The Gill action was initiated on December 12, 2013. ECF No. 1. Following the Court's decision to grant in part and deny in part Ford's motion to dismiss, only the Gills' claims for breach of express and implied warranty remain. ECF No. 35.

Samuel and Deborah Gill purchased their 2005 Ford Expedition on or about October 21, 2005. ECF No. 74-6. The vehicle had been initially delivered to the dealership by Ford on January 25, 2005. ECF No. 74-6. At the time of purchase, the vehicle's mileage was approximately 10,700. S. Gill Dep. 27:6-9, ECF No. 74-8. Neither Mr. Gill nor Mrs. Gill reviewed any Ford warranty materials before purchasing the vehicle and no warranties factored into their decision to make the purchase. S. Gill Dep. 25:11-13, 26:24-27:1, Dec. 10, 2014, ECF No. 74-8; D. Gill Dep. 40:15-23, ECF No. 74-7.

The Gills first experienced a loss of power while driving in late 2011 or early 2012. S. Gill Dep. 33:3-23, ECF No. 74-8; D. Gill Dep. 71:20-80:19, ECF No. 74-7. The Gills did not take the vehicle for repair until they experienced a second

7

loss of power in February 2012. D. Gill Dep. 81:25-83:23, ECF
No. 74-7; S. Gill Dep. 34:18-35:4, ECF No. 74-8; ECF No. 74-9.
The Gills' vehicle underwent various repairs at 98 Tire and
Service Center, Inc., including replacement of the throttle body
assembly, which cost the Gills $520.98 in total. ECF No. 74-9.

Then, in April 2013, the Gills experienced a third
loss of power. S. Gill Dep. 43:5-25, ECF No. 74-8; D. Gill Dep.
87:17-93:6, ECF No. 74-7. The same service center, 98 Tire and
Service Center, Inc., told the Gills that the throttle body
assembly would need to be replaced for a second time, so the
Gills contacted Courtesy Ford in Hattiesburg, Mississippi. S.
Gill Dep. 47:11-48:13, ECF No. 74-8; D. Gill Dep. 93:2-94:12,
ECF No. 74-8; ECF No. 74-10. Courtesy Ford performed various
repairs on the Gills' vehicle, but did not replace the throttle
body assembly. S. Gill Dep. 48:23-24, ECF No. 74-8; ECF No. 74-
10.

    D.  Consolidation

On July 15, 2014, this Court consolidated the Schmidt
and Gill matters for all pretrial purposes and ordered that all
future filings in the two actions be made on the Schmidt docket.
ECF No. 29. Upon consideration of Ford's motion to dismiss, the
Court dismissed several of Plaintiffs' claims. The remaining
claims are as follows: (1) Schmidt's breach of express warranty

claim (Schmidt Count I); (2) Schmidt's breach of implied
warranty claim (Schmidt Count III); (3) Gooder's claim for
unjust enrichment (Schmidt Count XIV); (4) the Gills' breach of
express warranty claim (Gill Count I); and (5) the Gills' breach
of implied warranty claim (Gill Count II).

Since consolidation, the parties have engaged in
substantial discovery, including written discovery, numerous
depositions, technical inspections, and the exchange of expert
reports. Ford filed its motion for summary judgment against all
Plaintiffs, ECF No. 74, to which Plaintiffs responded, ECF No.
81. The motion is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## IV.  APPLICABLE LAW

The Court has subject matter jurisdiction over Plaintiffs' claims under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.) and 28 U.S.C. §§ 1332(d)(2) and 1453, as Plaintiffs bring state law claims as part of the putative class action.

Federal courts sitting in diversity generally apply the substantive choice-of-law rules of the forum state, which here is Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216,

219 (3d Cir. 2005). Here, the parties have agreed that the law
of Plaintiffs' respective states of residence governs the
substantive issues, and the Court has applied the law
accordingly throughout these cases' existence. See Gill, 2014 WL
2805250, at *2; Schmidt, 972 F. Supp. 2d at 717; see also Steaks
Unlimited, Inc. v. Deaner, 623 F.2d 264, 269 (3d Cir. 1980)
(explaining that it is appropriate for the parties to agree to
the governing substantive law and the district court to follow
the parties' agreement). As such, Schmidt's express warranty and
implied warranty claims are governed by New Jersey law, the
Gills' express warranty and implied warranty claims are governed
by New Jersey law, and Gooder's unjust enrichment claim is
governed by Illinois law.[6]

## V.   DISCUSSION

Ford moves for summary judgment based on a series of
arguments. Ford argues first that Schmidt's and the Gills'
breach of express warranty claims fail because any applicable
express warranty has expired. Ford also argues that the Gills'
breach of express warranty claim fails because the Gills did not
rely on the existence of the warranty when purchasing their

---

[6]     Perhaps inadvertently, Ford states that Gooder's
unjust enrichment claim is governed by Mississippi law. Def.'s
Mot. Summ. J. 3 n.3. Yet Defendant ultimately--and
appropriately--applies Illinois law to argue that summary
judgment is appropriate as to Gooder's claim. Id. at 30-33.

vehicle. Next, Ford argues that Schmidt's and the Gills' breach
of implied warranty claims fail because their claims are
untimely and they have not demonstrated that Ford violated any
implied warranty with respect to their vehicles. Finally, Ford
argues that Gooder's unjust enrichment claim fails because there
is no underlying basis for the claim under Illinois law and
Gooder has not established that Ford has unfairly retained a
benefit. Each argument will be addressed in turn.

    A.   <u>Schmidt and the Gills' breach of express warranty
         claim</u>

Defendant moves for summary judgment as to Plaintiffs'
breach of express warranty claims on the grounds that (1) any
applicable express warranty has expired, and (2) the Gills did
not rely on the existence of the warranty when purchasing the
vehicle.

    1.   <u>Breach of Express Warranty</u>

Schmidt's breach of express warranty claim is governed
by New Jersey law. <u>Schmidt</u>, 972 F. Supp. 2d at 715. The Gills'
breach of express warranty claim is governed by Mississippi law.
<u>Id.</u> Under both New Jersey and Mississippi law, to state a claim
for breach of express warranty, a plaintiff must show that the
defendant made an affirmation, promise, or description about the
product with which the product failed to conform. <u>See</u> <u>Frederico</u>

v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) (discussing New Jersey law); Forbes v. Gen. Motors Corp., 935 So. 2d 869, 873 (Miss. 2006).

Defendant argues that Plaintiffs' breach of express warranty claims fail because any applicable express warranty has expired. Defs.'s Mot. Summ. J. 22, ECF No. 74. Plaintiffs, in turn, argue that the warranties' vague and ambiguous language is to be decided by the jury, which may reasonably determine that the warranties' language is sufficiently broad to encompass the alleged defects. Pls.' Opp'n 33-34, ECF No. 81. Therefore, the Court must first determine whether the terms of the Defendant's warranties are ambiguous.

  a. The warranties' terms are clear and unambiguous

Under both New Jersey and Mississippi law, a court starts with the plain language of the contract to determine the parties' intent. Tupelo Redevelopment Agency v. Abernathy, 913 So. 2d 278, 283 (Miss. 2005); Schor v. FMS Fin. Corp., 814 A.2d 1108, 1112 (N.J. Super. Ct. 2002). When a contract contains a material ambiguity, "summary judgment is unavailable and the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence." Adams Assocs., L.L.C. v. E. Sav. Bank, FSB, No. L-135-11, 2013 WL 2476356, at *2 (N.J. Super. Ct. App. Div. June

13

11, 2013); see also Epperson v. SOUTHBank, 93 So. 3d 10, 17
(Miss. 2012) ("If the reviewing Court finds the terms of the
contract to be ambiguous or subject to more than one
interpretation, the case must be submitted to the trier of fact,
and summary judgment is not appropriate.").

But "when the contract is clear the court is bound to
enforce the contract as it finds it." Conway v. 287 Corp. Ctr.
Assocs., 901 A.2d 341, 349 (N.J. 2006); see also Epperson, 93
So. 3d at 17 ("In a summary judgment case, the reviewing Court
need not go through the entire three-step analysis; the Court
should determine only whether the contract is ambiguous.
Questions of contract construction and ambiguity are questions
of law that are committed to the court rather than questions of
fact committed to the factfinder." (quoting Royer Homes of
Miss., Inc. v. Chandeleur Homes, Inc., 857 So. 2d 748, 752-53
(Miss. 2003))).

Given this legal landscape, the Court looks first to
the plain language of the contract to determine whether it is
clear and unambiguous. A contractual term or provision is
ambiguous if it is susceptible to more than one reasonable
interpretation. Powell v. Alemaz, Inc., 760 A.2d 1141, 1147
(N.J. Super. Ct. App. Div. 2000); Epperson, 93 So. 3d at 19.

Here, Plaintiff fails to point out any ambiguity in
the language of Ford's express warranties as set forth in Ford's

14

2005 Model Year Warranty Guide. See ECF No. 74-13. The warranties contained therein include (1) a "New Vehicle Limited Warranty," (2) an "Emissions Defect Warranty," and (3) an "Emissions Performance Warranty." Id. at 2. The three warranties provide different coverage expiration dates and cover different vehicle parts and defects. See generally id.

Plaintiffs' examples of cases where courts have determined that an ambiguity exists in an express warranty are distinguishable. For example, the court in Forbes v. General Motors Corp., 935 So. 2d 869 (Miss. 2006), determined that the term "hard enough" as the impact threshold for airbag inflation in the defendant's warranty presented a "classic jury question." Id. at 878. But here, unlike the plaintiff in Forbes who identified a specific ambiguity, Plaintiffs fail to identify any specific term in Ford's warranties that are ambiguous.

Similarly, in State Farm Mutual Automobile Insurance Co. v. Ford Motor Co., 736 So. 2d 384 (Miss. Ct. App. 1999), the court held that a jury question existed as to whether the limited warranty's terms exclude subsequent vehicle damage due to an alleged part or design defect. Id. at 389. The warranty stated that fire damage is excluded if it results from "alteration, misuse, or accident" but not if it results from "a defective part or a failure to diagnose or repair following a warranty-covered service request." Id. Given this language, the

court concluded that a genuine issue of fact existed as to whether the defendant was responsible for the repair or replacement of the entire vehicle caused by the alleged defect. Id.

In the present case, Plaintiffs contend that Defendant inconsistently argues what is and is not covered by the warranty of eight years or 80,000 miles, thereby revealing an ambiguity in the terms. Pls.' Opp'n 34-35. But Defendant's position is not inconsistent.

The Emissions Defect Warranty specifically states that it covers the "catalytic converter, powertrain control module, onboard emissions diagnostic device, natural gas vehicle (NGV) module (Bi-fuel/CNG), electronic emission control unit, and transmission control module" for "8 years or 80,000 miles (whichever occurs first)." ECF No. 74-13 at 12. The warranty period of three years or 36,000 miles covers "all other covered parts" and instructs the user to "[s]ee WHAT IS COVERED for list of covered parts." Id.

The Emissions Performance Warranty covers the same parts for the warranty period of eight years or 80,000 miles: the "catalytic converter, powertrain control module, onboard emissions diagnostic device, natural gas vehicle (NGV) module (Bi-fuel/CNG), electronic emission control unit, and transmission control module" are covered for "8 years or 80,000

miles (whichever occurs first)." Id. at 13. It then states that the warranty coverage period for two years or 24,000 miles covers "all other covered parts" and instructs the user to "[s]ee WHAT IS COVERED for list of covered parts." Id.

Under the "WHAT IS COVERED?" section, the warranty guide lists the parts "covered by both the Emissions Defect Warranty and the Emissions Performance Warranty." Id. at 13. Because they are "covered by both the Emissions Defect Warranty and the Emissions Performance Warranty," this list includes all parts specified as qualifying for the warranty period of eight years or 80,000 miles--i.e., the catalytic converter, powertrain control module, onboard emissions diagnostic device, NGV module (Bi-fuel/CNG), electronic emission control unit, and transmission control module. Id. 13-14. The "WHAT IS COVERED?" section also lists at least thirty-two other parts, including the "Throttle Body Assembly (MFI)." But because these thirty-two other parts are not specified as being covered by the warranty period of eight years or 80,000 miles, they constitute "all other covered parts" subject to the Emissions Defect's warranty period of three years or 36,000 miles and the Emissions Performance's warranty period of two years or 24,000 miles. Therefore, the appearance of the throttle body assembly in the "WHAT IS COVERED?" list along with the catalytic converter and powertrain control module, which are specifically covered for

17

eight years or 80,000 miles, does not mean that the throttle body assembly is subject to the same coverage.

And even if subjecting different parts to different coverage periods constituted some sort of inconsistency, it does not establish ambiguity as to the warranties' terms. For example, Myles Kitchen, a consultant specializing in automotive electrics-related matters, opined that he "find[s] it very difficult to understand why all of the components that affect emissions, some are covered and some are not covered." Kitchen Dep. Tr. 117:21-24, ECF No. 81-7. But even though Mr. Kitchen may not "understand why" some parts are or are not covered by the longer warranty period does not render the warranty's terms ambiguous. And Plaintiffs do not explain how the warranties' terms--as confusing as Plaintiffs may believe them to be--are subject to more than one reasonable interpretation. Graziano v. Grant, 741 A.2d 156, 163 (N.J. Super. Ct. App. Div. 1999) ("[I]t is not the function of the court to make a better contract for the parties.").

Plaintiff also cites to Gladden v. Cadillac Motor Car Division, General Motors Corp., 416 A.2d 394 (N.J. 1980). In Gladden, the Supreme Court of New Jersey considered whether the defendant "legally and effectively limited its liability for damages for a breach of the express warranty to either replacement of the failed tire or a partial or full refund of

18

the tire's purchase price." Id. at 398. After reviewing the
defendant's warranty booklet, the court determined that its
warranty exclusions "cut deeply into the substantive effect of
the warranty relating to tire capacity and quality." Id. at 399.
The court explained that the warranty "intermixes affirmations
of quality and performance with disclaimers of scope and
limitations upon relief," such that it presented the owner with
a "linguistic maze." Id. at 401. Therefore, because the
defendant's "attempted limitation of its damages for breach of
its express warranty was not prominently, conspicuously, and
clearly set forth," and because the terms were misleading, the
court concluded that the defendant's exclusions could not be
given legal effect. Id. at 402.

In this case, Plaintiffs argue that "Ford's Warranty
Guide provides consumers with a linguistic maze rather than a
simple and straightforward document outlining the terms of
coverage." Pls.' Opp'n 36. But in contrast to the issue in
Gladden, the issue is not whether Defendant's warranty terms can
be given legal effect. Plaintiff makes no allegation that
Defendant's terms improperly or illegally excluded the throttle
body assembly or TPS or that the warranties were otherwise
constructed to evade liability or limit damages for any breach.
As such, Gladden has no bearing on the required analysis.

19

And finally, Plaintiffs misread Herbstman v. Eastman Kodak Co., 342 A.2d 181 (N.J. 1975). Plaintiffs cite Herbstman for the proposition that "[o]nly when the parties have the same understanding of the language of an express warranty may it be deemed clear and unambiguous." Pls.' Opp'n 34. But the Supreme Court of New Jersey in Herbstman merely stated that "[w]here both parties have the same understanding of the language, then it must be deemed to be clear and unambiguous." Herbstman, 342 A.2d at 187. The New Jersey court did not state that the "only" way a term may be shown as clear and unambiguous is where the parties have the same understanding. Indeed, "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." Epperson, 93 So. 3d at 16–17 (quoting Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So. 2d 400, 404 (Miss. 1997)).

In sum, Plaintiffs have identified no ambiguity in the warranties' terms. Rather, the warranties' terms are clear. Therefore, the Court will apply the terms' plain meaning to determine whether the throttle body assembly is covered.

> b.   Any express warranty applicable to
>      Plaintiffs' claims expired by the time
>      Plaintiffs' claims arose

Plaintiffs' express warranty claims arise from alleged incidents and repairs that occurred more than six years after

their vehicles were first sold by Ford and after the vehicles had been driven more than 60,000 miles. Plaintiffs' claims specifically relate to the repair and replacement of the throttle body assemblies on their vehicles. Therefore, for Plaintiffs' breach of warranty claims to survive, the warranty under which Plaintiffs seek to bring their claims must (1) cover a period that exceeds six years or 60,000 miles and (2) must cover the repair and replacement of the throttle body assemblies.

First, Plaintiffs' express warranty claims cannot rely on the affirmations or promises made in the "New Vehicle Limited Warranty." The New Vehicle Limited Warranty provides for bumper-to-bumper, safety restraint, corrosion, and 6.0L Power-Stroke Diesel Engine coverage. ECF No. 74-13, at 5. The bumper-to-bumper coverage "begins at the warranty start date and lasts for three years or 36,000 miles, whichever occurs first." Id. The safety restraint coverage "begins at the warranty start date and lasts for five years or 50,000 miles, whichever occurs first." Id. at 6. Corrosion coverage "begins at the warranty start date and covers body sheet metal panels against corrosion due to a defect in factory-supplied materials or workmanship." Id. Corrosion coverage "lasts for 5 years, regardless of miles driven." Id. The 6.0L Power-Stoke coverage applies to "the direct injection diesel engine and engine components." Id. at 7.

The "warranty start date" is defined in the Warranty Guide as
"the day you take delivery of your new vehicle or the day it is
first put into service (for example, as a dealer demonstrator),
whichever occurs first." Id. at 2. The New Vehicle Limited
Warranty "does not cover: (1) parts and labor needed to maintain
the vehicle; and (2) the replacement of parts due to normal wear
and tear." Id. at 8.

Here, the warranty start date for Plaintiffs' vehicles
occurred six years prior to the initiation of their suit, and
Plaintiffs' vehicles had been driven over 60,000 miles. Coverage
under the New Vehicle Limited Warranty "begins at the warranty
start date and lasts for three years or 36,000 miles, whichever
occurs first." Id. at 9. Moreover, the repair and replacement of
the throttle body assemblies constitute "parts and labor needed
to maintain the vehicle," which are expressly excluded from
coverage under the New Vehicle Limited Warranty. Therefore, the
New Vehicle Limited Warranty does not apply to Plaintiffs'
claims.

Second, Plaintiffs' express warranty claims are not
supported by the affirmations or promises in the "Emissions
Defect Warranty." The Emissions Defect Warranty provides that
during the coverage period, Defendant warrants that:

- [Y]our vehicle or engine is designed, built, and
  equipped to meet - at the time it is sold - the

emissions regulations of the U.S. Environmental
Protection Agency (EPA).

- [Y]our vehicle or engine is free from defects in
factory-supplied materials or workmanship that
could prevent it from conforming with applicable
EPA regulations.

- [Y]ou will not be charged for diagnosis, repair,
replacement, or adjustment of defective
emissions-related parts listed under What is
Covered? On pages 13-15.

Id. at 16.

The warranty coverage period for passenger cars and
light duty trucks is "8 years or 80,000 miles (whichever occurs
first) for catalytic converter, powertrain control module,
onboard emissions diagnostic device, natural gas vehicle (NGV)
module (Bi-fuel/CNG), electronic emission control unit, and
transmission control module." Id. at 12. The warranty coverage
period for passenger cars and light duty trucks is "3 years or
36,000 miles (whichever occurs first) for all other covered
parts." Id.

Here, the timing of Plaintiffs' claims would fall
within the warranty period of eight years or 80,000 miles on the
"Emissions Defect Warranty," because Plaintiffs' claims arose
around year six and after 60,000 miles. But the throttle body
assembly, which Plaintiff alleges is defective, does not fall
within the list of covered parts for the warranty period of
eight years or 80,000 miles. See id. at 12.

23

Instead, as previously discussed, throttle body assembly would fall within the provision "for all other covered parts" because it is listed in the "what is covered" portion of the Warranty Manual. Id. at 13-14. But Plaintiffs' claims were raised after six years and 60,000 miles. Therefore, even though the throttle body assembly part is listed as covered by this warranty, Plaintiffs' claims exceed the year and mileage limitations, so Plaintiffs' breach of warranty claims cannot rely on the Emissions Defect Warranty.

Third, Plaintiffs' claims are not covered by the "Emissions Performance Warranty." The Emissions Performance Warranty provides that Defendant "will repair, replace, or adjust--with no charge for labor, diagnosis, or parts--any emissions control device or systems" if certain conditions are met, such as "maintain[ing] and operat[ing] [the] vehicle according to the instructions on proper care" and the "vehicle has not been tampered with, misused, or abused." Id. 12-13.

Plaintiffs argue that the throttle body assembly is covered by the Emissions Performance Warranty because that warranty provision states that it covers "any emissions control device or system." Pls.'s Mem. 35. But Plaintiffs ignore the remaining language of the Emissions Performance Warranty Coverage section of the Warranty Guide--namely, the language setting forth the coverage period.

24

The Emissions Performance Warranty coverage period for passenger cars and light duty trucks is "8 years or 80,000 miles (whichever occurs first) for catalytic converter, powertrain control module, onboard emissions diagnostic device, natural gas vehicle (NGV) module (Bi-fuel/CNG), electronic emission control unit, and transmission control module." Id. at 12. The warranty coverage period for passenger cars and light duty trucks is "2 years or 24,000 miles (whichever occurs first) for all other covered parts." Id.

Here, the alleged defect does not fall within the Emissions Performance Warranty's coverage period of eight years or 80,000 miles for the same reasons that it does not fall within the Emissions Defect Warranty's coverage period--that is, the throttle body assemblies are not included in the specific list of covered parts.

Instead, the Emissions Performance Warranty contains a provision "for all other covered parts," which includes the throttle body assembly, and covers these parts for two years or 24,000 miles. However, Plaintiffs' claims were raised after six years and 60,000 miles. Therefore, the Emissions Performance Warranty does not cover Plaintiffs' claims.

In sum, Plaintiffs' claims, which rest on the alleged defect in the throttle body assembly, do not fall within the plain and unambiguous terms of Ford's express warranties.

25

Plaintiffs' claims are not covered by the New Vehicle Limited
Warranty because Plaintiffs' claims exceeded the coverage period
of three years or 36,000 miles, and the throttle body assembly
is expressly excluded from this warranty's coverage. Plaintiffs'
claims are not covered by the Emissions Defect Warranty either,
because the throttle body assembly is not subject to the
coverage period of eight years or 80,000 miles, and Plaintiffs'
claims fell outside of the coverage period of three years or
36,000 miles for the throttle body assembly. Finally,
Plaintiffs' claims are not covered by the Emissions Performance
Warranty, because the throttle body assembly is not subject to
the coverage period of eight years or 80,000 miles, and
Plaintiffs' claims fell outside of the coverage period of two
years or 24,000 miles for the throttle body assembly.

Therefore, because any express warranty applicable to
the repair and replacement of the throttle body assemblies on
Plaintiffs' vehicle had expired, Plaintiffs have failed to show
that there is a genuine issue of fact as to whether the
defendant made an affirmation, promise, or description about the
product with which the product failed to conform. The Court will
enter summary judgment in Defendant's favor on Plaintiffs'
express warranty claims.

26

2.    Reliance on the Warranties

Even assuming arguendo that the Gills' breach of
express warranty claim was covered by the Ford warranties'
terms, Defendant also argues that the Gills' breach of express
warranty claim fails, because they did not rely on the existence
of the warranty when purchasing the vehicle, as required under
Mississippi law. Def.'s Mot. Summ. J. 25. Plaintiffs assert that
Defendant misreads Mississippi contract law. Pls.' Opp'n 36-38.

Under the Mississippi Products Liability Act ("MPLA"),
to establish a prima facie case for breach of an express
warranty, the claimant must prove by a preponderance of the
evidence that the product breached a warranty or representation
"upon which the claimant justifiably relied in electing to use
the product." Miss. Code Ann. § 11-1-63(a)(i)(4).

But a claimant can "justifiably rely" on a warranty
without having read certain text. For example, in Forbes v.
General Motors Corp., 935 So. 2d 869 (Miss. 2006), the plaintiff
brought a products liability action against an automobile
manufacturer and automobile dealership after the air bags in the
plaintiff's vehicle failed to deploy in a traffic accident. Id.
at 871. The plaintiff had not read the terms of the owner's
manual before purchasing the vehicle, but he had specifically
"inquired about the presence of an air bag from the salesman and
ensured that the vehicle he was purchasing was equipped with one

as a specific feature." Id. at 875. When asked about the airbag feature, the salesman answered based on the representations in the owner's manual. Id. Relying on the salesman's answer, the plaintiff decided to purchase that particular car. Id.

The Mississippi Supreme Court held that the manufacturer could be liable for having breached an express warranty in the owner's manual, even though the consumer never read the manual. Id. According to the court, "the fact that the [plaintiffs] never read their owner's manual is not fatal to their case," and "[i]t [wa]s still possible to rely on assertions therein without having actually read them." Id. The court pointed out that "[i]t would be quite unusual for a consumer to read an owner's manual before buying a car," and "[e]ven more unusual would be for a consumer to insist upon reading the manual before buying the automobile and requiring that an understanding of the manual be a condition precedent to purchasing the car." Id. Rather, the salesman's representations to the plaintiff, which recited the terms of the owner's manual, constituted an "express factual representation" under Miss. Code Ann. § 11-1-63(a)(i)(4).

Thus, under Mississippi law, even if a plaintiff has not specifically read the terms of an express warranty, "[t]here must be some evidence . . . that the alleged warranty 'became part of the basis' for the plaintiff's decision to purchase

28

and/or use the product." Scirocco v. Ford Motor Co., No. 13-128, 2015 WL 2451225, at *4 (S.D. Miss. May 21, 2015) (quoting Forbes, 935 So. 2d at 875). Section 11-1-63(a)(i)(4) is explicit that "express factual representations" must be made for there to be a breach of an express warranty. See also McSwain v. Sunrise Med., Inc., 689 F. Supp. 2d 835, 848 (S.D. Miss. 2010) (granting summary judgment on the plaintiff's breach of warranty claim under the MPLA where the plaintiff had not presented any evidence that the defendant made an express representation or that he relied on any information from the defendant).

In this case, the Gills bought their Expedition in 2006. It had been a loaner vehicle for the dealership and had approximately 10,000 miles of use at the time of the Gills' purchase. S. Gill Dep. 21:24—22:6, 27:6-9, ECF No. 74-8. Mr. Gill did not review any warranty materials prior to purchasing the vehicle and the warranty was not a factor in his decision to purchase it. Id. 25:11-13, 26:24-27:1. He was given the Owner's Manual when he purchased the vehicle, but he does not recall reading it. Id. 25:14-26:3. Mrs. Gill did not review any warranty materials before or after purchasing the vehicle. D. Gill Dep. 40:15-23, ECF No. 74-7. There is no evidence that the warranties' terms were relayed to the Gills by a salesman or advertisement. Cf. Johnson v. Michaels of Or. Co., No. 07-291, 2009 WL 458570, at *3, 5 (N.D. Miss. Feb. 23, 2009) (denying the

defendants' motion for summary judgment where the plaintiff testified that the product's reputation, as represented in the defendants' advertisement, was at least part of what made him purchase it).

Therefore, there is no dispute of material fact that the Gills did not rely on the warranties' terms in purchasing the vehicle. And because Mississippi law requires some evidence that the alleged warranty became part of the basis for the plaintiff's decision to purchase the product, the Court will grant summary judgment for Defendant on the Gills' breach of express warranty claim.

B.   Breach of Implied Warranty

Defendant next argues that the breach of implied warranty claims cannot proceed because they are time barred. Def.'s Mot. Summ. J. 26. Plaintiffs contend that Defendant has waived its right to challenge Plaintiffs' implied warranty claims based on timeliness. Pls.' Opp'n 42.

In response to a pleading, a party must affirmatively state any avoidance or affirmative defense based on the statute of limitations. Fed. R. Civ. P. 8(c). Failure to raise such a defense in an appropriate responsive pleading or motion may result in a waiver. Id.; Chainey v. Street, 523 F.3d 200, 209 (3d Cir. 2008). But if the non-movant would not suffer

30

prejudice, the statute of limitations may nevertheless be asserted after an answer has been filed. Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 506 (3d Cir. 2006).

Here, in its answer to the Amended Complaint, Defendant stated that "[s]ome of Plaintiffs' claims may be barred by applicable statutes of limitation." ECF No. 17, at 18. Although Defendant did not flesh out the affirmative defense until it filed its motion for summary judgment, Plaintiffs were put on notice that Defendant sought to assert the defense.[7] Accordingly, they had ample time to explore the issue and prepare a response to Ford's later motion for summary judgment.[8] Therefore, Plaintiffs suffered no prejudice from Ford's decision to give more life to the defense in its motion for summary

---

[7]     "Twombly and Iqbal do not apply to affirmative defenses. An affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved." Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011).

[8]     Moreover, Plaintiff did not take advantage of Federal Rule of Civil Procedure 56(d). If a party opposing summary judgment "believes that s/he needs additional time for discovery, [Rule 56(d)] specifies the procedure to be followed." Pa., Dep't of Pub. Welfare v. Sebelius, 674 F.3d 139, 157 (3d Cir. 2012) (alteration in original) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988)) (addressing the predecessor to Rule 56(d), Rule 56(f)). The rule requires "a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling, 855 F.2d at 139-40.

judgment on Plaintiffs' breach of implied warranty claims, and
the Court will proceed to analyze the viability of the defense.

Like their express warranty claims, Schmidt's breach
of implied warranty claim is governed by New Jersey law and the
Gills' breach of implied warranty claim is governed by
Mississippi law.

Ford first argues that Schmidt's breach of implied
warranty claim is untimely under New Jersey law. Under New
Jersey law, "the statute of limitations for a breach of warranty
is four years and accrues when the breach occurs." Travelers
Indem. Co. v. Dammann & Co., 592 F. Supp. 2d 752, 763 (D.N.J.
2008) (citing N.J. Stat. Ann. § 12A:2-725). "A breach of
warranty occurs when tender of delivery is made, except that
where a warranty explicitly extends to future performance of the
goods and discovery of the breach must await the time of such
performance the cause of action accrues when the breach is or
should have been discovered."[9] N.J. Stat. Ann. § 12A-725(2). The
"delivery" is "the delivery by the original seller to the
original buyer and not the delivery made at a later date to the
ultimate user." Cianfrani v. Kalmar-Ac Handling Sys., Inc., No.

---

[9]     The future performance exception does not apply to
breach of implied warranty claims. Travelers, 592 F. Supp. 2d at
765 ("Implied warranties, by their very nature, cannot extend to
future performance because such an extension must be explicit
and an implied warranty cannot explicitly state anything.").

93-5640, 1995 WL 563289, at *8 (D.N.J. Sept. 11, 1995) (quoting 5 David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2-725:104 at 270 (3d ed. 1994)).

Here, the original seller, Ford, tendered delivery of Schmidt's 2005 Ford Expedition to the original buyer, a Ford dealership, on March 15, 2005. ECF No. 74-5, at 1. The delivery made at a later date, December 27, 2012, to the ultimate user, Schmidt, occurred more than seven years after Ford first tendered delivery to the dealership. Therefore, because Schmidt brought his claim after the four-year statute of limitations had expired, Schmidt's breach of implied warranty claim is time barred.

Ford next argues that the Gills' breach of implied warranty claim is untimely under Mississippi law. Under Mississippi law, "[a]n action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued." Miss. Code Ann. § 75-2-725(1). A claim for breach of contract for sale accrues when the breach occurs, which is at the time of tender of delivery.[10] Id. § 75-7-725(2).

---

[10]     Like the future performance exception under New Jersey law, the future performance exception under Mississippi law does not apply to implied warranties, because an implied warranty cannot explicitly extend to future performance of the goods. See Progressive Ins. Co. v. Monaco Coach Corp., No. 05-37, 2006 WL 839520, at *5 (S.D. Miss. 2006) (stating that "an implied

Here, although it is unclear when Ford tendered delivery of the Gills' 2005 Ford Expedition to the original buyer, the Gills purchased the used vehicle on October 21, 2005. ECF No. 74-6; S. Gill Dep. 22:3-11, ECF No. 81-4 (explaining that the vehicle was purchased "used" after it had served as a "demonstrator" for the dealership). The Gills first filed their breach of implied warranty claim on December 12, 2013, which was more than eight years after the Gills' purchase date. Therefore, because the Gills brought their claim after the six-year statute of limitations had expired, the Gills' breach of implied warranty claim is time barred.[11]

In sum, because there is no issue of material fact that Schmidt's and the Gills' claims were filed after the applicable statutes of limitations expired, the Court will grant summary judgment in Ford's favor as to both claims.

C.   Unjust Enrichment

Gooder's unjust enrichment claim is governed by Illinois law. Defendant contends that Gooder's claim cannot sound in quasi-contract principles, because an express contract

_____

warranty, by simple definition, cannot 'explicitly' extend to future performance").

[11]   Because the implied warranty claims are time barred, the Court need not consider Defendant's alternative argument that Plaintiffs have provided no evidence that their vehicles were not merchantable or otherwise defective at the time of sale. See Def.'s Mot. Summ. J. 28.

governed the relationship between Gooder and Defendant, and
Gooder's claim cannot sound in fraud, because Gooder has not
provided any evidence of fraudulent behavior by Defendant.
Def.'s Mot. Summ. J. 31-32. Finally, Defendant argues that,
under either theory, Gooder has failed to establish that
Defendant retained any unfair benefit from sale of the vehicle
to Gooder. Id.

To succeed on a claim for unjust enrichment under
Illinois law, a plaintiff must establish that he "has no
adequate remedy at law, the defendant has unjustly retained a
benefit to plaintiff's detriment, and that retention violates
fundamental principles of justice, equity, and good conscience."
Trujillo v. Apple Computer, Inc., 581 F. Supp. 2d 935, 941 (N.D.
Ill. 2008) (citing HPI Health Care Servs., Inc. v. Mt. Vernon
Hosp., 545 N.E.2d 672, 679 (Ill. 1989)). "Because unjust
enrichment is based on an implied contract, where there is a
specific contract which governs the relationship of the parties,
the doctrine of unjust enrichment has no application." People ex
rel. Hartigan v. E & E Hauling, Inc., 607 N.E.2d 165, 177 (Ill.
1992) (quoting La Throp v. Bell Fed. Sav. & Loan Ass'n, 370
N.E.2d 188, 195 (Ill. 1977)); see Prima Tek II, L.L.C. v.
Klerk's Plastic Indus., B.V., 525 F.3d 533, 541 (7th Cir. 2008)
(explaining that, under Illinois law, "damages for unjust
enrichment are not awardable when, as here, there is a contract

35

between the parties on the subject in dispute") (citing La Throp, 370 N.E.2d at 195). It is the "the subject matter of the contract" that determines whether the contract governs the relevant relationship, "not whether the contract contains terms or provisions related to the claim." Util. Audit, Inc. v. Horace Mann Serv. Corp., 383 F.3d 683, 689 (7th Cir. 2004) (citing First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir. 1985); Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp., 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982)).

Here, the subject matter of the Ford Warranty Guide governs the parties' relationship as to the replacement and repair of the throttle body assembly. Gooder Dep. 21:8-24, ECF No. 81-5. As discussed above with regard to Plaintiffs Schmidt and the Gills' express warranty claims, the repair and replacement of the throttle body assembly is covered either by (1) the Emissions Defect Warranty for three years or 36,000 miles from the date that the new vehicle is taken by its purchaser or the day when it was first put into service, or (2) the Emissions Performance Warranty for two years or 24,000 miles from the date that the new vehicle is taken by its purchaser or the day when it was first put into service. See ECF No. 74-13, at 2, 12-13. Therefore, Gooder cannot maintain an unjust enrichment claim against Ford based on a theory of quasi-

contract.

The second species of unjust enrichment under Illinois law sounds in unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, rather than quasi-contract. Saletech, LLC v. E. Balt, Inc., 20 N.E.3d 796, 808 (Ill. App. Ct. 2014) (quoting Alliance Acceptance Co. v. Yale Ins. Agency, Inc., 648 N.E.2d 971, 977 (Ill. App. Ct. 1995)). If a plaintiff proceeds on a theory of unlawful conduct, but the underlying claim of fraud, duress, or undue influence is dismissed, the unjust enrichment claim cannot stand. See Ibarrola v. Kind, LLC, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) (explaining that "a claim for unjust enrichment cannot stand on its own in light of the Court's dismissal of [the plaintiff's] fraud and express warranty claims"); Sefton v. Toyota Motor Sales U.S.A., Inc., No. 09-3787, 2010 WL 1506709, at *6 (N.D. Ill. Apr. 14, 2010) (dismissing unjust enrichment claims because underlying fraud claims were dismissed).

Here, the Court previously dismissed Gooder's fraud claim. Schmidt, 972 F. Supp. 2d at 721. And Gooder does not otherwise set forth any evidence of duress, undue influence, or deception by Ford. Therefore, Gooder's claim for unjust enrichment cannot proceed pursuant to this second avenue either.

In a final effort, Gooder argues that his unjust enrichment claim is not based on a theory of quasi-contract

liability or his previously-dismissed fraud claim, but is an entirely separate cause of action. He specifically argues that "Illinois recognizes an independent cause of action for unjust enrichment." Pl.'s Resp. 43 (quoting Peddinghaus v. Peddinghaus, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998)). According to Gooder, "a plaintiff need not rely on an attendant fraud count, so long as he has pleaded facts of wrongdoing on the part of the defendant." Id. (citing Peddinghaus, 692 N.E.2d at 1225). But Gooder is incorrect.

In Peddinghaus, a beneficiary who sold his shares in a family trust to his brother's children brought suit against the brother and children, claiming fraud, breach of fiduciary duty, and unjust enrichment. 692 N.E.2d at 944-45. The court first addressed the fraud claim and concluded that "plaintiff has pleaded that [the brother] was acting as defendants' agent when he allegedly committed fraud against plaintiff," which, in combination with the well-pleaded facts, was sufficient to state a cause of action for fraud in the inducement. Id. at 1224.

After considering other issues, the court addressed the plaintiff's unjust enrichment claim. The Peddinghaus court explained that to "state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the

fundamental principles of justice, equity, and good conscience."
Id. at 1225 (quoting HPI Health Care, 545 N.E.2d at 679). The
court concluded that the plaintiff could not proceed on a theory
of quasi-contract for his unjust enrichment claim because the
purchase agreement governed the parties' relationship. Id. at
1225. Instead, the court explained that "plaintiff's unjust
enrichment claim is based on tort, instead of quasi-contract,"
and "because plaintiff's amended complaint makes sufficient,
specific allegations of fraud on the part of defendants,"
plaintiff successfully stated a claim for unjust enrichment. Id.
at 1226.

 Here, as previously discussed, Plaintiff's unjust
enrichment claim fails as a matter of law under either a quasi-
contract or tort-based theory. "While an unjust enrichment claim
may be pursued as an independent cause of action, where the
claim 'rests on the same improper conduct alleged in another
claim . . . [it] will stand or fall with the related claim.'"
Krug v. Am. Family Mut. Ins. Co., No. 16-4532, 2016 WL 2866142,
at *3 (N.D. Ill. May 17, 2016) (alteration in original) (quoting
Cleary v. Philip Morris Inc., 656 F.3d 511, 517 (7th Cir.
2011)). Therefore, because Gooder's fraud claim was previously
dismissed, Gooder's unjust enrichment claim based on the same
conduct fails as a matter of law.

 But even if he could proceed on one of the two

39

recognized theories, Gooder fails to establish that he provided Ford with a benefit. To recover under a theory of unjust enrichment, a plaintiff "must show that [the] defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment." People ex rel. Hartigan, 607 N.E.2d at 177. Here, Gooder cannot proceed on a theory of direct benefit because he purchased the vehicle from a used car dealer and not from Ford. Gooder Dep. 15:1-8, ECF No. 81-5. Therefore, Ford received no direct benefit from Gooder.

However, an indirect benefit can support a claim for unjust enrichment. Muehlbauer v. Gen. Motors Corp., 431 F. Supp. 2d 847, 853 (N.D. Ill. 2006). Specifically, unjust enrichment claims may be sustained against a manufacturer when the payment was made to a retailer on a theory of indirect benefit. See Wiegel v. Stork Craft Mfg., Inc., 780 F. Supp. 2d 691, 695 (N.D. Ill. 2011) (allowing unjust enrichment claim against manufacturer when product was purchased from third-party retailer); Muehlbauer, 431 F. Supp. 2d at 853 ("[A]n unjust enrichment claim may be premised on an indirect conferral of benefits.").

In the instant case, Gooder paid Bryan Ford, a Ford dealership, to replace his vehicle's throttle body on his vehicle. Gooder Dep. 39:12, ECF No. 81-5. But Gooder has not alleged, nor provided proof, that the dealership gave or was

required to share its profits from the repair with Ford. See id.
34:6-10 ("Q: Okay. So at any point have you written a check or
otherwise given money to Ford Motor Company? A: No. Well, for
another Ford I bought years ago."). And although there was a
period where Ford was making the specific part at issue, there
were also several different manufacturers at that time, see
Engle Dep. 125:6-20, ECF No. 81-15, and Gooder has not submitted
evidence to support the assertion that Ford parts were used for
the repairs on his vehicle, cf. Daigle v. Ford Motor Co., No.
09-3214, 2012 WL 3113854, at *12 n.4 (D. Minn. July 31, 2012)
(granting summary judgment on the plaintiff's unjust enrichment
claim where the plaintiff argued that Ford required its dealers
to use Ford parts for replacement but the plaintiff did not
"submit[] evidence to support the assertion that Ford parts
were, in fact, used").

        In sum, there is no evidence that Ford received a
profit, either directly or indirectly, from Gooder. The only
benefit retained by Ford that is illustrated by the record
occurred prior to Gooder's purchase of the vehicle, when the
vehicle's previous owner paid for the vehicle and took
possession of it. Therefore, Plaintiff has failed to show that
there is a genuine issue of material fact, and summary judgment
will be granted in Ford's favor as to Gooder's unjust enrichment
claim.

## VI.  CONCLUSION

For the foregoing reasons, the Court will grant Ford's Motion for Summary Judgment. Judgment shall be entered in favor of Ford and against Plaintiffs on all claims. An appropriate order follows.